# Hatchett *v.* Billingslea.
# Brickell *v.* Billingslea.

*Final Settlement of Accounts of Resigned Administrator.*

1. *Statutory provisions regulating settlements of accounts of executors or administrators whose authority has ceased.*—The several statutory provisions contained in the Code of 1867, as sections 2232 to 2238, inclusive, and 2165 to 2167, inclusive, and in the Code of 1876 as sections 2537 to 2540, inclusive, and 2590 to 2596, inclusive, though not collated, nor even placed in juxtaposition, in either compilation of the statutes, relate to the same subject, and are to be construed together, giving operation to each.

2. *Notice of settlement to administrator de bonis non.*—When an executor or administrator who has resigned or been removed, or the personal representa-

[Hatchett v. Billingslea.]

tive of one who is deceased, makes a settlement of his accounts, whether voluntary or compulsory, with a succeeding administrator, personal notice of the settlement must be given to such succeeding administrator (Code, § 2538), and notice by publication or posting, under the general statute (§ 2512), is not sufficient.

3. *Same; recital of notice or appearance; discontinuance.*—On appeal from the decree rendered on such settlement, by the administrator *de bonis non*, the failure of the record to show notice to him would work a reversal, unless it showed that he appeared; and although notice to him would be unnecessary, if he appeared, or if the proceedings were instituted by him, a former citation issued at his instance, which was discontinued by the failure to prosecute it (no order being made in reference to it on the day appointed), would not dispense with the necessity for notice.

4. *Same; effect of former settlement, as continuing notice.*—A former settlement, made with another administrator *de bonis non*, and reversed by this court on appeal, would not operate as notice to a succeeding administrator on another settlement after the reversal.

5. *Jurisdiction of Probate Court in settlement of administrator's accounts.* In the settlement of the accounts of executors and administrators, as well as in the grant of letters testamentary or of administration, the Probate Court is a court of general jurisdiction, such settlements being *orphans' business* within the meaning of the constitutional grant of jurisdiction.

6. *Validity of probate decree as against administrator de bonis non, without notice; how vacated.*—On the settlement of the accounts of an executor or administrator who has resigned, the decree rendered is not void on its face, because the record does not affirmatively show personal notice to the administrator *de bonis non*, or an appearance by him; but, if he in fact had no notice, and did not appear, the decree is void, and may be annulled and vacated, at his instance, in the court by which it was rendered.

7. *Payments to or for distributee.*—On such settlement by an executor or administrator who has resigned or been removed, if he desires to charge a distributee with payments made on his separate account (Code, §§ 2644-46), the publication should give notice thereof; but in no case can he have a decree against the distributee, or against the administrator *de bonis non*, for an excess of such separate payments above the assets remaining in his hands.

8. *Statutes omitted from Code.*—The act approved August 12th, 1868, entitled "An act to authorize Probate Courts to render decrees in certain cases" (Sess. Acts 1868, p. 44), not having been carried into the Code of 1876, is not now of force.

APPEALS from the Probate Court of Montgomery.

In the matter of the final settlement of the accounts and vouchers of Mrs. Harriet Billingslea, as administratrix (and H. C. Billingslea, her husband, as administrator in right of his wife) of the estate of Robert J. Glenn, deceased, who was the husband of Mrs. Billingslea at the time of his death. The record shows, that said decedent died on the 4th day of May, 1858, in said county of Montgomery, where he resided, leaving a large estate, consisting principally of a plantation and slaves; that letters of administration on his estate were duly granted by the Probate Court of said county, on the 22d May, 1858, to Mrs. Harriet Glenn, his widow, who afterwards married said H. C. Billingslea; that Mrs. Billingslea resigned the administration on the 3d September, 1866, and her resignation was accepted; that letters of administration *de bonis non* were thereupon granted to W. G. Waller, who continued

[Hatchett v. Billingslea.]

to discharge the duties of the trust until his death, in May, 1872; and that letters of administration *de bonis non* were afterwards granted to W. T. Hatchett, one of the present appellants. The widow, as administratrix, kept the estate together, and cultivated the lands with the labor of the slaves, until their emancipation in 1865 ; but it is admitted that she did this without any order of court. She made a final settlement of her administration, soon after her resignation ; but, on that settlement, exceptions being reserved by the adverse parties to several rulings of the court, the decree rendered was reversed by this court on appeal, at its January term, 1868, and the cause was remanded, as shown by the report of the case— *Glenn v. Glenn*, 41 Ala. 571. After the reversal of the cause, another settlement was made in the Probate Court, in July, 1868; but the decree rendered was again reversed by this court on appeal, at its January term, 1871, and the cause was again remanded, as shown by the report of the case— *Billingslea v. Glenn*, 45 Ala. 540. No certificate of reversal, it seems, was sent to the lower court, or received by that court, prior to the 29th June, 1877; on which day, as the record shows, a citation was issued to Billingslea and wife, at the instance of Hatchett as administrator *de bonis non*, requiring them to appear and settle Mrs. Billingslea's administration on said estate. The citation required them to appear on the 19th day of July, 1877; but nothing appears to have been done in the matter on that day, so far as the record discloses. On the 22d August, 1877, Hatchett, as administrator *de bonis non*, filed a bill in equity against Billingslea and wife, making the heirs and distributees parties defendants with them, to compel a settlement of Mrs. Billingslea's administration. To this bill Billingslea and wife filed a plea, averring the pendency of the proceedings in the Probate Court, and alleging that said court had full jurisdiction to determine all matters arising on the settlement. The chancellor sustained the plea, and dismissed the bill; and his decree was affirmed by this court on appeal, at the last term.—See the report of the case— *Glenn's Adm'r v. Billingslea*, 63 Ala. 345–56—where the plea is set out at length.

The record does not show that any further proceedings were had in the Probate Court, until the 22d October, 1877 (after the affirmance of the chancellor's decree by this court), when the following entry was made: "This day come Harriet Billingslea and H. C. Billingslea, her husband, and move the court to set a day for final hearing and auditing of the account of said Harriet Billingslea as administrator of the estate of R. J. Glenn, deceased, heretofore decreed upon in this court, but reversed by the Supreme Court; and

suggested and made known to the court that, since the last proceeding in said cause, Annie Glenn, one of the heirs of said estate, has died, and Benjamin Trimble, who resides in said State and county, is the administrator of her estate; and that W. T. Hatchett, who resides in said State and county, is now the administrator *de bonis non* of the estate of said R. J. Glenn; and that Mary Glenn, another of said heirs, of full age, has intermarried with R. C. Brickell, who resides at Huntsville, Alabama; and they ask that said proceedings may be revived against all of said parties. It is therefore ordered by the court, that the 15th day of November, 1877, be appointed, as a day for the hearing and consideration of said account, and that notice thereof be given, by publication for three weeks in the *Advertiser and Mail*, a newspaper published in said county; and it appearing to the court that Leila Glenn, one of the heirs of said deceased, is a minor, it is ordered that Benjamin Gardner be, and is hereby, appointed guardian *ad litem*, to represent and protect her interest in all matters pertaining to said settlement, and that he have due notice of his appointment as such guardian *ad litem*, and of the day hereinbefore fixed."

The settlement was continued by the court several times (the orders of continuance not showing the appearance of any of the parties, nor stating any reason for the continuance), until the 19th November, 1877, when the following decree was rendered: "In the matter of the final settlement of the administration of the estate of Robert J. Glenn, deceased, by his widow, Harriet Billingslea. This cause, having been reversed and remanded by the Supreme Court, came on to be further heard this day, having been continued from the 15th inst.; and now come Harriet Billingslea, the former administratrix, and her husband, H. C. Billingslea, and move the court to proceed to audit the accounts of the said Harriet, heretofore filed in this court, for the final settlement of her administration. And it appearing to the court that notice of the day set for the hearing of this cause on the 15th November, specifying the name of the deceased, and of the administratrix and her husband, and that the settlement proposed to be a final settlement, has been given for three successive weeks, by publication in the *Montgomery Advertiser*, a newspaper published in said county, as ordered by this court on the 22d day of October, 1877; and Benjamin Gardner, who was heretofore appointed to act as guardian *ad litem* for Leila Glenn, an infant distributee, having consented to act as such guardian, and being now in court, and desiring the court to proceed in said cause; thereupon the court proceeded to audit and state said account, and,

upon such auditing, finds and decrees, that the said Harriet Billingslea and her husband, H. C. Billingslea, have accounted for all the assets which came into her or their hands ; and that the account of the said administratrix, as audited and stated, be allowed, passed, and recorded. And it appearing, by said account, that there is a balance of $2,006.13 in favor of said Harriet Billingslea, and it being further shown that the same is part of her statutory separate estate, and that the estate of the said R. J. Glenn is solvent; it is ordered, adjudged, and decreed, that she recover the said balance ($2,006. 13) of W. T. Hatchett, as administrator *de bonis non* of said estate, for which execution may issue, to be levied of the goods, chattels, and effects of said estate, in the hands of said W. T. Hatchett to be administered. The court then proceeded to examine and state the accounts of the said administratrix, filed in court, showing the amount of money laid out and expended by her for the heirs and distributees of said estate during her administration, said Leila Glenn, the minor, being represented by her guardian *ad litem*, Benjamin Gardner; and upon such auditing it appears to the court that the said administratrix, during her administration, has laid out and expended for Mary Brickell, one of said distributees, including interest (as charged against the administratrix in her account with the estate), for twelve years and six months from the end of the war, and without charging any interest prior thereto, the sum of $5,324.98 ; and that she expended for Annie Glenn, one of the distributees of said estate, during the same period, $2,560.82 ; and that she expended for Leila Glenn, another distributee of said estate, during the same period, the sum of $2,431.14 ; and that all of said sums were advanced by the said administratrix, during the minority of the said several distributees, for their due maintenance and education, out of the effects of said estate in her hands as administratrix, with which she has been charged in her accounts with said estate, and for which she has received no credit whatever ; it is therefore ordered and decreed, that the accounts of the said Harriet Billingslea, as administratrix, with the said Mary Brickell, Leila Glenn, and Annie Glenn, deceased, as the same are stated by the court, • be passed, allowed, and recorded ; and it is further ordered and decreed, that the said Mary Brickell be charged, on the final settlement and distribution of said estate, with the said sum of $5,324.98, as of this date, by way of payment of her distributive interest in said estate ; and that the said Harriet Billingslea be, and she is hereby, authorized to demand and receive, and the said W. T. Hatchett, the administrator *de bonis non* of said estate, is directed to pay to her, the said

sum of $5,324.98, with interest from this date, out of the distributive interest or share of said Mary Brickell in said estate, which may be in his hands for distribution at any time." Similar orders are made as to the balances found against Annie and Leila Glenn, respectively, and the decree then concludes, thus: "And it appearing to the court that the said administratrix, Harriet Billingslea, has accounted for, and delivered to the succeeding administrator, all the assets of said estate which came into her hands, or with which she is properly chargeable, it is ordered and decreed that the administration of said estate by Harriet Billingslea be decreed finally settled, and that she and her husband be, and they are hereby discharged from the same."

On the 12th January, 1880, Mrs. Mary Brickell filed her petition in said court, seeking to set aside this decree, and alleging that neither she nor Hatchett, the administrator *de bonis non*, had personal notice of the proceeding; and on the same day Hatchett filed his petition, seeking to set it aside on the same grounds. The two petitions were heard together by consent; and on the hearing, as appears by the bill of exceptions, all the proceedings had in the matter of said estate, as above stated, being in evidence, and there being no dispute as to the facts, the court dismissed the petitions. Each of the petitioners reserved a bill of exceptions to the ruling and decree, and each here assigns it as error. The two causes were argued and submitted together.

E. J. FITZPATRICK, with whom were THOS. H. WATTS, and D. CLOPTON, for appellants.—1. In the settlement of administrations, the Probate Court is a court of special and limited jurisdiction.—1 Brick. Digest, 791, § 796. Its jurisdiction is limited, as to every matter of which it would not have jurisdiction except for its grant by statute.—*Hays v. Cockrell*, 41 Ala. 81; *Wyatt's Adm'r v. Rambo*, 29 Ala. 526; *Lamar v. Gunter*, 39 Ala. 324; *Lewis v. Allred*, 57 Ala. 628.

2. In the absence of the statute, the Probate Court would have no jurisdiction to settle the accounts of a resigned, removed, or deceased administrator; and the administrator *de bonis non* could not be a party to such settlement, since his only right, at common law, was to recover the unadministered or unrecovered assets remaining *in specie* in the hands of his predecessor.—15 Ala. 268; 11 Ala. 872; *Hays v. Cockrell*, 41 Ala. 79.

3. In the exercise of a limited jurisdiction, the records of every court must affirmatively show the facts necessary to support its jurisdiction; otherwise, its judgments and decrees are nullities.—*Gunn v. Howell*, 27 Ala. 663; *Wyatt's Adm'r v.*

*Rambo*, 29 Ala. 510 ; *Wightman v. Karsner*, 20 Ala. 446 ; *Foster v. Glazener*, 27 Ala. 391.

4. The jurisdiction of the Probate Court to settle the accounts of an administrator whose authority has ceased, is given by sections 2537 and 2590 of the Code of 1876, which are the same in legal effect, though placed in different chapters, while the following sections are materially different. Section 2538, in chapter 7, requires personal service to the administrator *de bonis non ;* but there is no such provision, in terms, in chapter 9, in which section 2590 is found. Again, the former chapter provides, in section 2539, for a decree against the administrator *de bonis non,* but not for any decree in his favor ; while section 2591, in chapter 9, provides for a decree in his favor, but not for any decree against him. All these sections, relating to the same subject, must be construed together, as parts of one and the same system ; or, as indicated by the headings of the two chapters, one must be confined to voluntary settlements, in which the administrator himself is actor, and the other to compulsory settlements, in which the court or judge is the actor. If the former construction be adopted, then section 2538 applies to this settlement, and requires personal notice to the administrator *de bonis non ;* and the failure of the record to show such notice renders the settlement void, since notice is a jurisdictional requisite to the validity of all judgments and decrees.—3 Ala. 287 ; 12 Ala. 823 ; 21 Ala. 504 ; 27 Ala. 390 ; 39 Ala. 324 ; Freeman on Judgments, § 124. If the latter construction be correct, yet the appellees, by taking a decree against the administrator *de bonis non,* elected to pursue the remedy given by section 2537, and are estopped from claiming a settlement under section 2590.—1 Chitty's Pleading, 14th Amer. ed., 212 ; 1 Tidd's Pr., 4th Amer. ed., 10 ; 27 Ala. 562.

5. It is the duty of all courts to set aside their judgments, when void.—9 Ala. 335 ; 15 Ala. 231 ; 18 Ala. 622 ; 40 Ala. 247 ; Freeman on Judgments, §§ 98, 124.

6. The appearance of Waller, the former administrator *de bonis non,* on the settlement in July, 1868, did not dispense with the necessity of notice to Hatchett on this settlement. The statute regulating the revivor of actions at law (Code, § 2908), does not apply to settlements in the Probate Court ; and if it could be applied to such proceedings, there was no effort to revive in this case. There could have been no revivor, without personal service of notice of some kind. Even a decree against Waller, as administrator, would have been *res inter alios acta,* as against Hatchett, his successor.

7. The settlement being void for want of notice, the statements of amounts paid for the distributees, which is a

[Hatchett v. Billingslea.]

mere incident of that settlement, could not be decreed. Besides, no such statements as the law requires were ever filed. The record is silent as to any such statements, until the final decree; and the recitals of the statements in the decree in July, 1868, amount to nothing, since they were unauthorized where the estate was not kept together under an order of court.—9 Ala. 330; 13 Ala. 92 ; 60 Ala. 557. Neither the act of August, 1868, nor section 2644 of the Code, could give the court jurisdiction of those statements.—54 Ala. 596 ; 8 Ala. 655. Moreover, the statute does not apply to settlements made by executors or administrators whose authority has ceased, but is limited by its terms to estates "in the hands of an executor or administrator undistributed ;" and the record shows that Mrs. Billingslea had resigned, and delivered all the assets of the estate to her successor in the administration.

GUNTER & BLAKEY, *contra.*—1. *As to the appeal by Hatchett*: The sole question is, whether the entire proceeding is void on its face, because the record does not affirmatively show that he had personal notice twenty days before the settlement. The court had jurisdiction to make the settlement, *ex mero motu*, upon the resignation of the administratrix in 1866.—*Hatchett v. Billingslea,* at present term. It had jurisdiction for the further reason, that it was a pending proceeding, and the parties had already appeared and twice appealed to the Supreme Court.—See reports of case. Hatchett had made himself a party, by citing the administratrix to a settlement, and this dispensed with the necessity of any further notice : having intervened, and made himself a party, he is charged with notice of all subsequent proceedings in the cause. But, even if he was entitled to further notice, it is not necessary that the record, when assailed in this collateral proceeding, should affirmatively show that he had such notice. The statute does not require that the notice shall be in writing ; nor does it specify how or by whom it shall be given ; nor does it require the court to set out in the record the proof of notice on which it acted. As to all these matters, the record being · silent, the presumption will be indulged, that the court did its duty—that service of notice was made in proper form, and was proved to the satisfaction of the court. The Probate Court, under the provisions of the present constitution, is a court of general jurisdiction, and all reasonable presumptions are to be indulged in favor of the regularity of its proceedings—all presumptions that would be indulged in favor of a judgment of the Circuit Court, or a decree of the Chancery Court. The constitution was pur-

[Hatchett v. Billingslea.]

posely changed in this respect, to avoid the effect of the former decisions of this court, and to make the law conform to the views expressed by STONE, J., in *Ikelheimer v. Chapman*, 32 Ala. 698.

2. *As to the appeal by Mrs. Brickell:* She cannot complain of any want of notice, since she had twice appealed from the former decrees rendered in the case. The decree here impeached, and the decree rendered on the settlement in 1868, both show that the administratrix had filed the accounts between herself and the distributees. The power to make such settlement and decree is conferred on the court in the amplest manner by the statute (Code, § 2646), which declares that the provisions of the two preceding sections shall apply to executors and administrators "who have heretofore, in good faith, made necessary and reasonable expenditures for the maintenance and education of any minor entitled to a distributive share of the estate of which he is executor, *in all cases* where no final settlement of his administration, or distribution of the estate, has been made." This statute does not impose a duty in the future, nor prescribe conditions on which such expenditures might be in future made by executors or administrators. It applies, by express words, to expenditures already made, and specifies the cases in which they shall be allowed—that is, "in all cases where no final settlement or distribution has been made." This case comes within the terms and purposes of the statute; and if the record shows any error or irregularity in the statement of the account, it is not available in this proceding.

STONE, J.—Prior to the enactment of the statute, "To regulate settlements in the Orphan's Court," approved February 4th, 1846 (Pamph. Acts, 14), an administrator *de bonis non* could recover from his predecessor only such assets of the estate as remained in specie, unconverted and unchanged, 1 Brick. Dig. 919, § 82. That statute changed the law in this respect. Its provisions were carried into the Code of 1852, and form the subject of chapter 9, title 4, part 2, beginning with section 1876. That section provides that, "whenever an executor or administrator is removed, resigns, or his letters are revoked, or his authority ceases from any cause, he must, within one month thereafter, file his account, vouchers, evidence, and statement of the heirs and legatees, as in the case of other settlements; and upon the same being duly advertised as other settlements, his account must be audited, stated, and a decree rendered thereon." Section 1877 : "If there is any remaining or succeeding executor or administrator on said estate, a decree must be rendered in

his favor, for the amount found due on such settlement, or for the delivery of any personal property in the hands of the executor or administrator whose authority has ceased." The next four sections provide measures for compelling a settlement in such cases; and section 1882 provides, that "the proceedings under this article do not prevent any action by the remaining or succeeding executor or administrator, or by any other person entitled thereto, against such executor or administrator, for any property remaining in his hands, or other causes of action."

It will be observed that these enactments only authorized decrees *in favor* of a remaining or succeeding administrator, and gave no authority for rendering decrees against them. The law stood thus, until the amendatory statute of February 5th, 1858, was passed.—Pamph. Acts, 53. The first section of that statute provides, that the personal representative of a deceased executor or administrator, or a resigned or removed executor or administrator, may file his accounts and vouchers, and make final settlement of such administration. Section three introduces a new feature theretofore unknown. It provides, "that if, on said settlement, a balance shall be ascertained to be due from the estate of said testator or intestate, to said deceased, resigned, or removed executor or administrator, the Probate Court may render a decree in favor of the personal representative of such deceased executor or administrator, or in favor of such resigned or removed executor or administrator, against the said administrator *de bonis non*, for the balance so ascertained to be due from the estate of said testator or intestate; and payment thereof may be enforced by execution against such administrator *de bonis non*, to be levied of any effects of said estate in his hands unadministered, if said estate is solvent; but, if insolvent, then said decree to be paid as other claims against insolvent estates." The first section of this statute had provided, that the settlement under this act was "to be governed by the laws now in force in this State, regulating the settlement of estates of deceased persons." One of the provisions of the law then in force, regulating the settlement of estates of deceased persons, was, that notice must be given of the day appointed for such settlement, "by publication in some newspaper published in the county, for three successive weeks; or, if none is published therein, by posting such notice," &c.—Code of 1852, § 1805. Still, under the act of February 5th, 1858, we find this additional provision: Section 2. "That the executor(?) or administrator *de bonis non* of said original testator or intestate shall be made a party to said settlement, and shall have personal notice of the time

[Hatchett v. Billingslea.]

of said settlement served upon him, at least twenty days before the day appointed for said settlement."

In the Code of 1867, sections 1876 to 1882, inclusive, of the Code of 1852, are inserted *verbatim*, and without alteration, as sections 2232 to 2238, inclusive. As in the Code of 1852, they constitute chapter 9, title 4, part 2, with the same caption, "Compelling executors and administrators, whose authority has ceased, to make settlement." In the same Code of 1867, the act of February 5th, 1858, is inserted entire, in chapter 6, title 4, part 2, and constitutes sections 2165 to 2168, inclusive. Both statutes, or systems, relate to the same subject—the settlement of administrations, after the authority of the executor or administrator has terminated by resignation, removal, or death. Both provide for settlement of estates whose administration is incomplete, and in which a decree of distribution can not be made. Both contemplate the necessity of other and further functions of administratorship; and hence, a continuing or succeeding representative of the estate, and not the next of kin, is the person to be settled with; the person in whose favor, or against whom, the decree is to be rendered. In the case of *Hatchett v. Billingslea*, at the last term—a suit concerning this same administration—we had occasion to remark, that in the codification of 1867, the provisions of the act of February 5th, 1858, ought to have been interwoven with sections 1876 to 1882 of the Code of 1852; or, at all events, they should have been placed in juxtaposition. We have found no reason for changing our views then expressed.

When a resigned, removed, or representative of a deceased executor or administrator, makes settlement, either voluntarily or involuntarily, with an administrator *de bonis non*, notice by publication, or by posting, is not enough. In such case, the law has been changed and amended by section 2 of the act of 1858—now section 2538 (2166) of the Code of 1876. In other words, that section declares that, in that class of settlements, the notice by publication or posting, provided for in the Code of 1852, is insufficient. Any construction, other than this, will leave that section without any operation, so far as it requires personal notice to be served. Section 2590 of the Code of 1876 is, in substance, precisely the same as 2537 of the same Code. One of these sections should have been omitted, and section 2538, taken from the act of February 5th, 1858, should have been inserted immediately after the one retained. Then sections 2539 and 2591 should have been interwoven, or placed together by the codifiers, as covering the whole jurisdiction and power of the court in rendering decrees on settlements between the administrator

in chief and the continuing or succeeding administrator. Thus placed, counsel and courts would not have fallen into the errors we sometimes encounter, in reviewing such settlements. We come, then, to the conclusion, that the provisions of section 2538, Code of 1876, must be observed in all settlements, when a resigned or removed executor or administrator, or the personal representative of a deceased one, is the party on the one hand, and a continuing executor or administrator, or an administrator *de bonis non*, is the adversary party. We leave sections 2644–5–6 of the Code of 1876 for comment hereafter.

We have shown above that, in settlements such as this, personal notice, under section 2538, is required to be given to the administrator *de bonis non*. On appeal from such decree, if the record failed to show such notice, or the presence of the administrator *de bonis non* at the settlement, the decree would be reversed. The object of notice is, that the administrator may appear at the settlement, and have an opportunity to contest the account. This is eminently necessary and just; for, as the law now stands, a decree may be rendered against him, in favor of the outgone administrator; and if the estate be solvent, an execution may be ordered thereon, under which the assets of the estate may be sold away from his possession and control. On each of the inquiries, of a balance due the outgone administrator, and of the solvency of the estate, the estate and the administrator *de bonis non* should be represented. Of course, if the administrator *de bonis non* appeared, and if the record, by its recitals, showed that fact, this would be sufficient, and the decree would not be reversed for want of notice.

It is contended in this case that, inasmuch as the record recites that Hatchett, the administrator *de bonis non*, caused Mrs. Billingslea to be cited to make a final settlement, no notice to him was necessary. This, we think, would be true, if the citation had been obeyed. Inaugurating such proceedings, if they progressed regularly in obedience to such citation, he would be held cognizant of all that was done. The record recites, that Henry C. Billingslea and Harriet Billingslea were, on the 29th June, 1877, at the instance of W. T. Hatchett, ordered to be cited to appear before the Probate Court on the 18th day of July (then) next, to file their account and vouchers for a final settlement. The record does not inform us that any further action was had under this citation. In proceedings instituted by motion or notice, if the case be not tried or continued on the day set for hearing the motion, or the day to which the notice is returnable, the proceeding is discontinued.—2 Brick. Dig. 368, §§ 109,

110. The next proceeding was had on the 22d October, 1877. The record recites that, on that day, Harriet Billingslea and her husband, H. C. Billingslea, came, and moved the court to set a day for final hearing and auditing of the accounts, &c. The court thereupon appointed the 15th November, 1877, for the settlement, and ordered "that notice thereof be given by publication for three weeks in the *Advertiser and Mail*, a newspaper published in this county." No order for personal service on the administrator *de bonis non*. The cause was continued to the 19th November, 1877, and on that day the final settlement was had. In the final decree, after reciting the continuance from the 19th, it is said: "And now came Harriet Billingslea and her husband, H. C. Billingslea, and move the court to proceed to audit the accounts of the said Harriet heretofore filed in this court for the final settlement of her administration; and it appearing to the court that notice of the day set for the hearing of this cause on the 15th November, specifying the name of the deceased, and of the administratrix, Harriet Billingslea, and of her husband, H. C. Billingslea, and that the settlement (is) proposed to be a final settlement, has been given for three successive weeks by publication," &c.; "and Benjamin Gardner, who was heretofore appointed to act as guardian *ad litem* for Leila Glenn, an infant distributee, having consented to act as such guardian, and being now in court, and desiring the court to proceed in said cause: thereupon, the court proceeded to audit and state said account," &c. It will be observed that nothing is said about personal notice to W. T. Hatchett, the administrator *de bonis non*, nor of his presence at the settlement. The record fails to show any connection between the notice issued at the instance of Hatchett, and the settlement actually made; and such motion and notice, disregarded as the latter appears to have been, did not dispense with the necessity of giving notice under section 2538 of the Code.

It is urged, in the next place, that inasmuch as there had been two settlements made by Mrs. Billingslea of her administration—the decrees afterwards reversed in this court—and inasmuch as we held in the case of *Hatchett v. Billingslea*, at last term, that the jurisdiction of the Probate Court had attached by virtue of those proceedings, and had not been discontinued, Hatchett, the administrator *de bonis non*, in his representative capacity, must be presumed to have been present at the last settlement. The first two settlements were made with Waller, a former administrator *de bonis non*. The present settlement was had with a different and succeeding representative, and notice to Waller is not notice to Hatchett. The statutes in relation to revivor do not in terms

apply to proceedings in the Probate Court, such as this; and if they did, we are not informed that any steps have been taken by notice or motion, with a view to a revivor. We hold that a notice to Hatchett was necessary, under the statute.

Argument has been made as to the character of the jurisdiction we have been discussing—whether it is general, or special and limited. If the latter, then the error we have pointed out is fatal, even on a collateral presentation. Every thing is presumed in support of a general jurisdiction, which the record does not disprove; while nothing is presumed in favor of a special or limited jurisdiction, which the record does not affirmatively show.—2 Brick. Dig. 156-7. Under the constitution of 1875, article 6, section 9, Courts of Probate have general jurisdiction for the granting letters testamentary and of administration, and for orphan's business. We are satisfied the settlements of executors and administrators fall under the general definition, *orphan's business.*—*Ikelheimer v. Chapman*, 32 Ala. 676, opinion of STONE, J., 684-699. We will regard the Probate Court, in considering the question before us, as one of general jurisdiction.

The principle settled in *Gunn v. Howell*, 27 Ala. 663, would lead to the conclusion, that the decree in this case is void, even when collaterally presented, on the face of the record itself. In *Hunt v. Ellison*, 32 Ala. 173, opinion of STONE, J., the correctness of the decision in *Gunn v. Howell* is questioned. In that opinion is the following language: "A majority of the best-considered decisions hold, that if a judgment be pronounced, even by a court of general jurisdiction, against one over whom it has no jurisdiction, or who appears to have had no notice of the existence or pendency of the proceedings, such judgment will be declared a nullity, even when collaterally presented."

*Hall v. Williams*, 6 Pick. 232, was a suit on a judgment of a sister State, rendered by a court of general jurisdiction. One of the pleas in bar was, "That neither of the defendants was served with process, or had any notice of the original action, or appeared thereto, or authorized any person to appear for him." To this it was replied, "that the defendants are estopped by the record of Georgia from denying, notice, appearance, &c." Oyer of the record was claimed and obtained, and defendant demurred to the replication. The suit was by Hall against Williams and Fiske, and the return of the Georgia sheriff was, "I have served a copy on Edward Williams, Abijah Fiske not to be found in the county." The plea was by Gordon, attorney for Williams. The judgment entry was as follows: "Afterwards, to-wit, on," &c.,

" came the within named Henry Hall, &c., as well as the within named Edward Williams and Abijah Fiske within named, by their attorney within named, and the jurors," &c. The court, after declaring that the judgment of the Georgia court was to be treated altogether as domestic judgments, in regard to the proof of its existence, said : " In regard to the conclusiveness of such judgments to all intents and purposes, there is yet a question of considerable importance, which has been discussed and decided in almost every State in the Union in which there are printed reports of their judicial decisions ; and the question is presented now by the issue taken on the second and third pleas to this action. The defendants, in answer to the declaration, say that neither of them was served with notice of the suit in which the judgment was rendered, nor appeared, nor authorized any one to appear for him in the action, and that Fiske was never an inhabitant of, or resident in the State of Georgia. The plaintiffs reply, that the defendants are estopped by the record to deny these facts ; and the record being set forth on oyer, the defendants demur to the replication of estoppel. If it appeared by the record that the defendants had notice of the suit, or that they appeared in defense, we incline to think that it could not be gainsaid ; for, as we are bound to give full faith and credit to the record, the facts stated in it must be taken to be true, judicially ; and if they should be untrue, by reason of mistake, or otherwise, the aggrieved party must resort to the authorities where the judgment was rendered, for redress ; for he could not be allowed to contradict the record by a plea, and by an issue to the country thereon. But, if the record does not show any service of process, or any appearance in the suit, we think he may be allowed to avoid the effect of the judgment here, by showing that he was not within the jurisdiction of the court which rendered it ; for it is manifestly against first principles, that a man should be condemned, either criminally or civilly, without an opportunity to be heard in his defense." The court held the plea good, and the replication bad. The conclusions of the court were summarized as follows : " If it appear by the record that there was no jurisdiction over the person, the judgment is a nullity, not to be received as *prima facie* evidence, and the plaintiff must resort to other courts to support his action, or fail. The full faith and credit required to be given in each State to the judicial proceedings of other States, will prevent any evidence to contradict the facts which show a jurisdiction, if such appear on the record."

In *Armstrong v. Henshaw* (1 Dev. Law, 187), it was ruled,

that a judgment against a defendant named in the writ, but
not made a party either by service, public notice, or attach-
ing his estate, is merely void, and should be disregarded
when produced on *nul teil record.* See, also, *Bonner v. Tier*,
3 Dev. Law, 533. In *Shaefer v. Yates* (2 B. Monroe, 453),
the court said : " In a legal or available sense, no person is
a party to a suit without either an appearance or judicial
notice of some sort ; and there can be no doubt that a judg-
ment against a person who was never made a party, is utterly
void." In *Backman v. Hopkins*, 6 Eng. (Ark.) 157, the court
said : " A judgment rendered without having acquired juris-
diction of the person of the defendant, by notice or otherwise,
would not bind the defendant in the State where it was ren-
dered, and, of course, not in any other State to which it might
be transmitted. No valid judgment can be rendered, where-
by to affect the rights or liberty of the citizen, unless the
court has first acquired jurisdiction of his person, as well as
of the subject-matter in controversy." In *Shriver's Lessee v.
Lynn*, 2 How. U. S. 43, it is said : "A decree without notice
would be treated as a nullity." In *Webster v. Reid*, 11 How.
437, it was said : " When a judgment is brought collaterally
before the court as evidence, it may be shown to be void
upon its face by a want of notice to the person against whom
judgment was entered, or for fraud." See, also, *Hollings-
worth v. Barbour*, 4 Pet. 466; *Whittaker v. Murray*, 15 Ill.
293; *Downer v. Shaw*, 2 Foster, N. H. 277 ; *Lamar v. Gunter*,
39 Ala. 324.

Governed by the principles declared in *Hunt v. Ellison*,
*supra*, and *Hall v. Williams*, 6 Pick. 232, which we approve,
we hold that the settlement and decree in this case, consid-
ered alone, are not void on their face. The presumptions
we entertain in favor of the correct exercise of a general juris-
diction, lead us to this conclusion. If the record showed
that Hatchett had actual personal notice, or that he was
present at the settlement, we would hold this presumption
conclusive. The record contains no such proof or recital.
It fails to show that any personal notice was ordered or given,
and it fails to show he was present at the settlement. The
settlement and the decree affect the estate of Glenn very seri-
ously. If Hatchett had had notice of it, and the estate suf-
fered in the settlement by reason of his failure or neglect to
attend, we will not say he would not thereby have fastened a
liability on himself. In his petition, he not only denies hav-
ing any notice, but he avers " he did not in fact appear on
said settlement," and that " he had no knowledge of such
settlement, until long after the same purports to have been
made." If this be true—and in this proceeding we must

[Hatchett v. Billingslea.]

regard it as true—the presumption of notice or knowledge of the settlement is overturned, and the decree of the Probate Court is void.

We think the practice pursued in this case, of praying to have the decree revoked and annulled in the court in which it was rendered, an eminently proper one. It retains the proceedings in the Probate Court, where speedy and inexpensive justice can be administered, without incurring the expense and delay which would attend a resort to another tribunal. We confine this remark for the present, however, to proceedings in the Probate Court. But see 2 Brick. Dig. 140, § 137. It results, that the decree of the Probate Court in Hatchett's case must be reversed, and the cause remanded.

As to Mrs. Brickell's appeal, we need say but little. The reversal of the judgment pronounced in the main cause of Hatchett, administrator, must of necessity carry with it a reversal of the dependent decree against Mrs. Brickell and all other parties. We feel it our duty, however, to make some comments on sections 2644-5-6 of the Code of 1876. They are, in terms, confined to estates " in the hands of an executor or administrator undistributed," and " where no final settlement of his administration or distribution has been made." In the decree, he is to be allowed " credit for such expenses." No provision for a decree against the succeeding administrator. By section 2645, he is required " to file, with his account for final settlement, a separate account for the amounts so paid by him for such minor." Nothing is said in these sections about notice to the distributee thus sought to be charged; but, on principle, we hold that, in such cases, the publication should give notice of such claim, and that such separate account had been filed.—*Brown v. Wheeler*, 3 Ala. 287; *Wilburn v. McCalley*, at the last term.

We have not alluded to the act "To authorize Probate Courts to render decrees in certain cases," approved August 12th, 1868.—Pamph. Acts, 44. That statute is not carried into the Code of 1876, and it is therefore not now of force.

We are not able to perceive on what principle the Probate Court can make to Mrs. Billingslea, in her settlement with the administrator *de bonis non*, any allowance, beyond assets in her hands, for expenditures she may have made for the distributees. As we understand from the record, the chief, if not the entire remaining assets, passed out of the control of Mrs. Billingslea, and into the hands of the administrator *de bonis non*. There is no statute which authorizes a decree in favor of the outgone administrator, either against the administrator *de bonis non*, or the distributee, for moneys

thus expended. In the absence of some agreement for the payment of any balance due from the distributee who has been thus advanced to, it would seem that the Probate Court is powerless to grant relief in any form, other than by allowing a credit against a balance, ascertained to be in the hands of an outgone administrator. If there is any relief in such a case as this—and it would seem there should be—it must be sought elsewhere.—*Reaves v. Garrett*, 34 Ala. 558; *Benagh v. Turrentine*, 60 Ala. 557.

Reversed and remanded.

BRICKELL, C. J., not sitting, being interested in the settlement.