[Wells, Admr. v. American Mortgage Co. of Scotland, Lim.]

the notes, shows that the defendant has not since the cause of action accrued been in this State either continuously or at different aggregated periods sufficiently long for the bar of our statute to be perfected; and on the principle announced above they were not open to any of the objections taken by the demurrer.

There was no error in admitting in evidence the table of rates of interest in other States printed in the pamphlet acts of the General Assembly.—Code, § 1823, and case there cited.

There was no error in excluding the proposed testimony of Holley as to plaintiff having agreed to look to Collins for this debt, and released him, etc. This evidence was not pertinent to any issue in the case when it was first offered. After a plea had been interposed under which it was pertinent, the court allowed it to go to the jury.

Affirmed.

# Wells, Admr. *v.* American Mortgage Co. of Scotland, Lim.

123 413
127 433,

*Bill in Equity to foreclose Mortgage; Petition for Decree for Balance Due.*

1. *Foreclosure of mortgage; decree for balance of mortgage debt after application of proceeds of sale; not void for want of notice* —Under the statute, (Code, § 859), the claim for a decree for any balance of a mortgage debt remaining due after the application thereto of the proceeds of the sale of the mortgaged property is within the *lis pendens* of every foreclosure suit, from the time of its institution; and, therefore, while it is necessary for the plaintiff in a foreclosure suit to move for such decree against the mortgagor after the balance has been fixed and ascertained, no notice of such motion need be given to the respondent, and such decree rendered for the balance is not void because notice was not given to the respondent. (TYSON, J., *dissenting*.)

[Wells, Admr. v. American Mortgage Co. of Scotland, Lim.]

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. J. R. DOWDELL.

On November 23, 1887, the appellee, the American Mortgage Company of Scotland, filed a bill in the chancery court of Shelby county, asking for the foreclosure of a certain mortgage executed by Sarah Wells, deceased, to the complainant mortgage company, to which said suit H. R. Wells, as administrator of the estate of Sarah Wells, deceased, and others were made parties defendant. In this suit a decree was rendered granting the relief prayed for by the complainant, ordering the sale of the lands conveyed in the mortgage, and that the register report his action under said decree, and the amount, if any, remaining due upon the mortgage debt. The lands were sold, as ordered in said decree, and the register reported that there still remained due on the mortgage indebtedness the sum of $1,541.26. Upon the coming in of this report, on motion of the complainant, to confirm said report and for judgment for balance ascertained to be due against H. R. Wells, as administrator of the estate of Sarah Wells, deceased, there was a decree rendered on September 22, 1896, confirming the report of the register, and decreeing further that the complainant have and recover of H. R. Wells, administrator of the estate of Sarah Wells, deceased, the sum of $1,548.26. Upon this decree execution was issued against H. R. Wells on July 24, 1897, in favor of the complainant, and was returned "no property found." On February 4, 1898, another execution was issued against H. R. Wells, in favor of the complainants for said sum of money; and the sheriff levied said execution upon property belonging to H. R. Wells. Thereupon H. R. Wells filed his petition, setting out the facts as stated above, and averring that no notice of any reference to be held by said register to ascertain the balance due after said sale was given to the petitioner, and that he had no notice of any motion for the judgment over against him for the balance due complainant after the sale of the property which was ordered to be sold, and that therefore the personal decree against the petitioner was void. The other averments of the petition are sufficiently stated in the opinion.

[Wells, Admr. v. American Mortgage Co. of Scotland, Lim.]

The prayer of the petition was that said decree against the said H. R. Wells, as administrator of the estate of Sarah Wells, deceased, and said execution and sale be annulled and set aside, and that the register be required to certify said decree to the probate court of the county as a claim against said insolvent estate.

The complainant demurred to this petition, and moved to strike it from the file upon the grounds that it appears from said petition that it is an attempt to call into question a final decree of this court in a court in which it was rendered after the adjournment of the term when it was rendered; that it was not a bill of review, and that there are no allegations of fraud.

Upon the submission of the cause upon the motion to strike said petition and upon the demurrers, the chancellor rendered a decree sustaining the motion and the demurrer, and ordered that the petition be stricken from the file. From this decree the respondent petitioner appeals, and assigns the rendition thereof as error.

W. S. CARY, for appellant.—In *Brown v. Wheeler,* 3 Ala. 287, it is said that "notice is essential to the validity of a summary judgment." "Notice must affirmatively appear." "Where a summary remedy is given, those who wish to avail themselves of its provisions must be confined strictly to its provisions and shall take nothing by intendment." The notice must appear of record.—*Bates v. Planters & Merchants Bank,* 8 Port. 101-2; *Chandler v. Reid,* 114 Ala. 390; *Warwick v. Brooks,* 70 Ala. 412. "The rule is that every reasonable intendment is made in favor of the regularity of the proceedings of courts of general jurisdiction; yet this rule cannot be invoked in favor of their summary proceedings under special statutory powers, in derogation of the common law; as to which, they are placed upon the same footing with courts of limited and special jurisdiction."—*Foster v. Glaxener,* 27 Ala. 391; *Gunn v. Howell,* Ib. 663.

"Notice to the parties in interest is an essential element in all judicial proceedings."—*McCurry v. Hooper,* 12 Ala. 825; *Eslava v. Lepretre,* 21 Ala. 504; Black on Judgments, § 280; 3 Brick. Dig., 587, § 5; *Brown v. Wheeler,* 3 Ala. 287.

KNOX, BOWIE & DIXON and W. F. THETFORD, JR., *contra.*—The decree in this case for the balance after the application to the mortgage debt of the proceeds from the sale was not void. The plaintiff followed the statute and well established rules of practice. The respondent Wells was in no way entitled to any other notice than the necessary notice to give the court jurisdiction of the original cause and this will be presumed.—*Security Loan Asso. v. Weems,* 69 Ala. 584; *Talladega Mercantile Co. v. McDonald,* 97 Ala. 508.

TYSON, J.—The other members of the court are of opinion, that by sheer force of the statute, a claim for decree over for any balance of the mortgage debt left after the application thereto of the proceeds of the sale of the mortgaged property, is within the *lis pendens* of every foreclosure suit from the moment of its institution, and, of consequence, that, while it is necessary for the complainant to move for such decree over after the balance has been fixed and ascertained, no notice of such motion need be given to the respondent: He has notice of complainant's claim in that regard, and of his right to make such motion in the contingency named and that it will be made, from the first, just as he has notice of all other relief the complainant may be or become entitled to in the cause.—Code, § 859, and cases there cited. It follows that the decree must be affirmed.

### DISSENTING OPINION.

I cannot concur in these views and accordingly express my dissent therefrom in the remaining portion of this opinion. It appears that on the 22d day of September, 1896, a decree was rendered in the foreclosure proceedings, by the chancery court, in favor of the complainant and against the respondent Wells, as administrator of the estate of Sarah Wells, for the deficiency found to be due upon the mortgage debt after allowing as a credit the proceeds of the lands conveyed by the mortgage and ordering the issuance of execution against him. On the 17th day of March, 1898, the respondent

Wells petitioned the chancellor in term time to quash the execution which had been issued against him personally, after a return by the sheriff of one previously issued upon the decree against him in his representative capacity endorsed "No property found." The grounds alleged in the petition were, that the decree for the deficiency was void, for the reason, that the respondent Wells had no notice of any reference by the register ascertaining the balance due the complainant or of any notice of the motion of complainant for a personal decree for the deficiency. It was also averred in the petition that respondent's intestate owned no property except the lands conveyed by the mortgage at the time of her death and the estate had been declared insolvent by the probate court of Shelby county prior to the rendition of the decree of the 22d of September, 1896. The petition was submitted for decree upon its merits, and motion of complainant to strike it and demurrer. The chancellor ordered it stricken from the file and decreed the petitioner liable for the costs incident to the filing of the petition, motion and demurrer, and ordered execution to issue against him for these costs.

The first question raised by the appellee is, that the decree dismissing the petition will not support an appeal under section 426 of the Code. If a want of jurisdiction was apparent on the record to decree the deficiency and order execution; the motion to quash the execution was the proper procedure to vacate the order in the decree for its issuance, and an appeal will lie from the judgment or decree granting or denying it.—3 Brick. Dig. 584, § 124. It is well settled that where a decree, void for want of jurisdiction, has been rendered, the court has the power and should, on motion, vacate such decree, at any time subsequent to its rendition; but if the decree is not void, the court has no power to alter, vary or annul it after the expiration of the term at which it was rendered, except for clerical error or omission on evidence shown by the record.—*Baker v. Barclift*, 76 Ala. 414; *Buchanan v. Thomason*, 70 Ala. 401. If void for want of jurisdiction in the court to render it, it was a mere nullity and may be impeached collaterally.—2 Brick. Dig. 157, § 17. Did the court have jurisdiction

to render the decree for the deficiency, or rather did the court exceed the jurisdiction invoked by the bill in the rendition of this decree? In solving the answer to this question, we are, of course, confined to the record in the cause, and evidence *aliunde* cannot be resorted to to aid us in its solution.—*Werborn v. Pinney,* 74 Ala. 591; *Lightsey v. Harris,* 20 Ala. 409; *Brown v. Turner,* 11 Ala. 758; *Pettus v. McClannahan,* 52 Ala. 55. The rule announced in the case of *Commissioners of Talladega v. Thompson,* 18 Ala. 694, and amplified in other cases which we will cite, will serve largely to solve the question under consideration. Nothing is intended to be without the jurisdiction of a Supreme Court (or a court of general jurisdiction), but that which specially appears to be so; and on the contrary, nothing is intended to be within the jurisdiction of an inferior (or court of limited jurisdiction) but that which is so expressly alleged. "Inferior courts," says Bacon, "are bound. in their original creation, to causes arising within such limited jurisdiction; hence it is necessary for them to set forth their authority, for nothing shall be intended within the jurisdiction of an inferior court, but what is expressly alleged to be so." It has been repeatedly held that where the court is one of limited jurisdiction, though it may not, strictly speaking, be an inferior court, the cause must appear on the record to be within the jurisdiction; and it must appear from the face of the proceedings, that such courts have acted within the scope of their jurisdiction." After quoting a part of this language in the case of *Pettus v. McClannahan,* the court said: "From the mere exercise of jurisdiction, by a court of general or superior jurisdiction, the existence of the jurisdictional facts is inferred, unless the record discloses the contrary. From the exercise of jurisdiction, by a court of inferior or limited jurisdiction, the existence of jurisdictional facts is not inferred; they must affirmatively appear from the record." This doctrine is thus stated in *Robertson v. Bradford,* 70 Ala. 387: "The principle is now too thoroughly imbedded in our system of jurisprudence to be disturbed at this late day, that there is a manifest distinction, touching pre-

sumption of jurisdiction between courts of general and those of limited jurisdiction. Where a court is of the first class, possessing general jurisdiction, nothing is intended to be without such jurisdiction, except that which appears to be so from the record. And, on the contrary, nothing is presumed to be within the jurisdiction of the court of limited jurisdiction except that which is so expressly alleged and affirmatively appears from the record."—*Joiner v. Winston*, 68 Ala. 129. All judicial tribunals in this State derive their existence from the constitution or statutes and their jurisdictions are conferred by these instrumentalities. So it may be said that in a certain sense the jurisdiction of all of them is limited—limited by the constitution or statute creating them. In another sense, some of the inferior courts and the Supreme Court may be said to be courts of general jurisdiction. As to whether the jurisdiction is limited or general, much necessarily depends upon the nature of the subject matter and the source from which the court hearing the cause derives its authority for the exercise of its jurisdiction in each particular case. To illustrate, courts of probate are courts of general jurisdiction, and we adopt this particular court in this illustration for the reason that questions involving the exercise of its jurisdiction have so often arisen and been passed upon by this court, in the matter of the grant of letters testamentary and of administration and for orphans' business is original, general and unlimited. Const., 1875, Art. VI, § 9. And this general jurisdiction extends to all subject-matters involved in the statutes enacted to carry out this original and general grant. *Barclift v. Treece*, 77 Ala. 528; *Steele v. Tutwiler*, 68 Ala. 107; *Hatchett v. Billingslea*, 65 Ala. 16; *Sims v. Waters*, 65 Ala. 442. But where the jurisdiction is conferred by statute, it is a court of limited jurisdiction. *Landford v. Dunklin & Reese*, 71 Ala. 594; *Ikelheimer v. Chapman*, 32 Ala. 676; 1 Brick. Dig. 439, § 172. It may be said that the jurisdiction of the court of chancery is conferred by statute and not by the constitution, and in this respect it is unlike the court of probate, and therefore these principles do not apply for the purpose of de-

termining the question as to whether its jurisdiction is general or limited. It is true that its jurisdiction is conferred by statute alone, and that the constitution simply grants the power to the General Assembly to establish such courts with original and appellate jurisdiction. Const., Art. VI, § 7. The statute, enacted in pursuance of the authority granted by the constitution is in these words (Code, § 638) : "The powers and jurisdiction of courts of chancery extend—

1. To all civil causes in which a plain and adequate remedy is not provided in the other judicial tribunals.

2. To all cases founded on a gambling consideration, so far as to sustain a bill of discovery and grant relief.

3. To subject an equitable title or claim to real estate to the payment of debts.

4. To such other cases as may be provided by law."

The scope of these four sub-divisions was clearly defined in the case of *Waldron, Isley & Co. v. Simmons, et al.,* 28 Ala. 629. The court there said: "The first sub-division which includes 'all civil causes in which a plain and adequate remedy is not provided in the other judicial tribunals' is but the adoption of the pre-existing rule; the second and third sub-divisions, which include cases founded on gambling consideration and cases to subject the equitable title to real estate to the payment of debts, are modifications, by way of enlargement, of the system of equity jurisprudence and jurisdiction which had been established in England prior to the American Revolution; and the fourth sub-division, which includes 'such other cases as may be provided by law,' embraces all cases which, at and before the adoption of the Code, were known to be within the jurisdiction of courts of equity, and are not embraced in the first three subdivisions." "For," says the court," to hold that the fourth subdivision means simply to declare that the powers and jurisdiction of courts of chancery 'extend to such other cases as may be provided for' by some section of the Code, or by some subsequent statute, is to deprive it of all meaning and practically to expunge it; for it is clear that the powers and jurisdiction of courts of chancery would extend to all cases provided for by the various sections of the Code and by subsequent statutes, as effectually without the fourth sub-division, as with it."

If then a court of chancery derives its jurisdiction solely from a statutory provision, and outside the grant of power conferred upon it by one of these sub-divisions, its jurisdiction is limited or special and its jurisdiction to determine the subject matter of the decree must affirmatively appear from the record. In other words, the general rule that everything will be presumed to be within the jurisdiction of a court of general jurisdiction must be limited to such things as fall within the general scope of its powers.—*Gunn v. Howell*, 27 Ala. 663; *Chilton v. Ala. Gold Life Ins. Co.*, 74 Ala. 293; *Falk v. Hecht*, 75 Ala. 296; *Jones v. Calloway*, 56 Ala. 46; *Little v. Fitts*, 33 Ala. 343; *Wyatt's Admr. v. Rambo*, 29 Ala. 521; *Canly v. Blue*, 62 Ala. 77; *Galpin v. Page*, 18 Wall. 350; *Cooper v. Sunderland*, 66 Am. Dec. 61.

It cannot be doubted that courts of equity have original and general jurisdiction to foreclose mortgages, based upon their inherent jurisdiction over trusts. And it may be said, when resort is had to the courts that its jurisdiction is exclusive for the reason the remedy cannot be enforced in courts of law. But there was no power in these courts under their original jurisdiction to render a personal decree in the foreclosure proceeding against the mortgagor or other person liable for the debt secured by the mortgage for the deficiency.—Wilsie on Mortgage Foreclosures (new ed.), § 601; 8 Am. & Eng. Encyc. Law, 264, and note 1. Nor did courts of chancery in this State possess this power until expressly conferred by statute.—Code, § 859; *Hunt v. Lewin and Wyser*, 4 Stew. & Port. 138; *Teal v. Lewis*, 85 Ala. 218; *Presley v. McLean*, 80 Ala. 309. This special jurisdiction is auxiliary, resultant and dependent upon the success of the complainant to secure a decree of foreclosure and the failure of the property conveyed by the mortgage to sell for enough to satisfy the mortgage debt. By force of the language of the statute which is "in all cases where an account is taken between the parties execution as at law may issue for the amount of indebtedness ascertained by the decree of the court; *and in all foreclosure suits or suits for the enforcement of equitable liens, execution may issue for the balance found due after the sale of the property ordered and decreed to be*

*sold,*" there must be two decrees in the cause; the first, decreeing the property subject to the lien of the mortgage and ordering and confirming the sale of it, and the second, decreeing the amount of the balance due the complainant after crediting the proceeds of the sale upon the mortgage debt and ordering execution. The purpose of the statute was, to avoid a multiplicity of suits; to relieve the mortgagee of the necessity of enforcing his demand for the balance due by suit at law, as was the case before its enactment.—*Winston v. Browning,* 61 Ala. 80; *Teddis v. Steele,* 70 Ala. 349; *Sayre v. Elyton Land Company,* 73 Ala. 85; *Perdue v. Brooks,* 95 Ala. 611; *Johnson v. Ward,* 82 Ala. 486; *Hunt v. Lewin, supra; Teal v. Lewis, supra; Presley v. McLean, supra; Orchard v. Hughes,* 1 Wall. 73.

The statute is silent as to the mode or method to be adopted by the complainant, mortgagee, to bring into exercise this special jurisdiction. It not infrequently happens that the mortgagor, or other person originally liable for the payment of the mortgage debt, has a perfect defense as against the enforcement of the debt, but cannot resist a foreclosure of the mortgage of the property conveyed by it. For instance, take the case presented here, the respondent, as an administrator of an insolvent estate, could not defend against the bill to subject his intestate's lands conveyed by her mortgage to the satisfaction of the complainant's debt, but no personal decree for the deficiency could have been rendered against him, had the bill by its allegations and prayer sought it against the defense that the estate had been legally declared insolvent. Or, in the case, where the debt secured by the mortgage is evidenced by a promissory note of the mortgagor and more than six years had elapsed between the maturity of the note and the filing of the bill, the statute of limitations would have been a valid defense against the remedy seeking a personal decree for the deficiency and no defense to the remedy seeking a foreclosure of the mortgage. Another apt illustration of these principles would be a case where a third person had purchased the mortgaged property from the mortgagor, assuming to pay the mortgage debt

as part of the consideration of his purchase price and the mortgagee accepted the promise of this third party and after doing so extended the time of payment of the original debt without the consent of the mortgagor. Upon a bill filed for foreclosure, it can hardly be doubted that the mortgagor has a perfect defense against that portion of the bill seeking a personal decree against him, upon the ground that as to the debt he was a mere surety and had been discharged from all liability by the extension of time to his principal without his consent; but as to that portion of the bill seeking to subject the mortgaged property to the satisfaction of the lien, this would be no defense.

These illustrations, though simple, demonstrate that the two remedies afforded the mortgagee in the same cause and by the same bill, different and distinct defenses to each of them may be interposed. How then is the mortgagor or his representative, in case of his death, to know that the jurisdiction of the court is invoked as to both remedies, or the court to know that it is the purpose of the complainant to do so, unless there is some allegation or statement in the pleadings of the complainant to put the defendant and the court upon notice that such is the case? It is optional with the complainant as to whether he will do so. He may, if he chooses, seek a decree of foreclosure of his mortgage without asking for a personal decree for the deficiency.—*Presley v. McLean, supra.* It is the purpose of pleadings to present the issue in controversy between the parties litigant. And unless the point is directly in question or necessarily involved in the issue presented the judgment or decree in a cause is not *res adjudicata.*—*McCall v. Jones,* 72 Ala. 368; *Gilbreath v. Jones,* 66 Ala. 129; *McDonald v. Mobile Life Ins. Co.,* 65 Ala. 358; *Chamberlain v. Gaillard,* 26 Ala. 504. Nor can an estoppel by judgment rest in inference or argument.—*McCravey v. Remson,* 19 Ala. 430; Freeman on Judgments, § 258; 1 Gr. Ev., § 528. The right of the defendant to know what issue he is required to defend against is of the very essence of his constitutional right "to due process of law." To hold that a court may render a decree or judgment upon a cause of action entirely *foreign* to the issue presented by the pleadings of

the complainant would be the equivalent of denying to him all right "to be heard by testimony or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved."—*Wilburn & Co. v. McCulley*, 63 Ala. 436.

The opinion of Chief Justice BEASLEY of the Supreme Court of New Jersey, in the case of *Munday v. Vail*, 34 N. J. Law, 418, where a decree of the chancery court is assailed upon a collateral attack as void, is a very lucid statement of the law upon the subject under consideration, and we quote at length from it: "From the statement of facts prefatory to this opinion, it appears that Asa Munday settled his property in trust for the use of himself and wife and the survivor, for life, with remainder to his children. Asa Munday is dead, Matilda Vail, the plaintiff in the court below being his sole issue. To her the widow and trustee released or conveyed their title and right in the premises. The defendant holds the property by virtue of a sheriff's sale under a decree for costs against Asa Munday made a long time after the above-mentioned deed of trust. It, therefore, is apparent that if the trust estate was existent at the time of this sale by the sheriff, the plaintiff's title is unquestionable. The case turns upon this point. The defense claims that the deed of trust and all rights under it were destroyed and annulled by the decree of the court of chancery, in the suit wherein Ephraim Munday was the complainant. The legal validity and effect of that decree is the point to be settled. It is obvious, at a glance, that this decree, so far as it affects the present question, is a most extraordinary one. It is opposed to the well settled practice of courts of equity and to the commonest principles of justice. This is clear when it is said that its effect is, if it have validity, to deprive an infant defendant of an estate vested in her, without an *issue* or a hearing with respect to her rights. The case made by the bill, was this: the complainant alleged that he had loaned money on a promise of security in the form of mortgage on certain land, and the borrower, in disregard of such contract, had conveyed such land in trust

for himself and wife, for life, with remainder to his children and he asked that such trust should be declared void with respect to his claim." It might be well to say here before proceeding further with the quotation that the trustee, *cestuis que trust* and the maker of the deed were parties to this proceeding. Continuing the Chief Justice said: "No one will maintain that either the prayer of the bill or the decree founded upon these facts could properly go beyond this. The creditor had no standing to ask that the deed of trust should be annulled as between the trustee and the *cestuis que trust*. If admitted to be fraudulent with respect to creditors even, the statute of frauds ordains its validity so far as relates to the parties to it. Such, likewise, is the admitted rule in equity. But in this case the decree does, in very unambiguous language, pronounce and adjudge the conveyance in trust to be invalid, not only so far as to let in the claim of the complaining creditor, but out and out as between the trustee and parties beneficially interested. If legal, its effect was to destroy the estates of the *cestuis que trust* and to revest the title in fee to the seller." After stating that there are three essentials to the jurisdiction of a court to adjudicate concerning the subject-matter in a given case, 1st, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present, and third, the point decided must be, in substance and effect within the issue, he said: "A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that because A. and B. are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court and it is only over those particular interests which they *choose to draw in question* that a power of judicial decision arises. * * * A judgment upon a matter outside of the issue must of necessity be altogether arbitrary and un-

just, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard or have had the opportunity of a hearing that the law gives so conclusive an effect to matters adjudicated."

The views expressed in this opinion are quoted and adopted by the Supreme Court of the United States in the case of *Reynolds v. Stockton*, 140 U. S. 254. See also *Seamster et al. Blackstock*, 83 Va. 232; *Ex parte Lange*, 18 Wall. 163; *Wade v. Hancock*, 76 Va. 620; *Crain v. Cavana*, 62 Barb. 109; *Atwood v. Frost*, (Mich.), 16 N. W. Rep. 685; *Unfried v. Herberer*, 63 Ind. 67; *Minor v. Walter*, 17 Mass. 237.

Applying the foregoing considerations to the case in hand, in which it appears from the record that the bill on its face seeks only the foreclosure of the mortgage and to subject the lands to its satisfaction, and there being no averment whatever that the property conveyed is insufficient to pay the debt or that there would likely be a deficiency for which a personal decree would be asked, we are constrained to hold, that the decree for the deficiency was void.—Wilsie on Mortgage Foreclosures (new ed.), § 293, and note on p. 349. It does appear from a recital in this decree that it was rendered on motion of the complainant for a balance over against the respondent as administrator, after allowing credit for the proceeds of the sale of the lands. As to this motion, there is no recital in the decree of any personal notice to him, nor does the record disclose that any notice was ever served upon him. Unaided by the presumption of jurisdiction, such notice must appear of record, and in the absence of it, the decree, if based upon the motion, is a nullity. Whatever may be the proper practice to invoke the jurisdiction of the court in such cases, whether by proper averments in the bill or by motion, it is very clear that the mortgagor or the person liable for the mortgage debt must have notice that a personal decree is sought against him and be afforded an opportunity to be heard.

The petition to vacate the decree and quash the execution should have been granted.