## LONG et al. vs. McDOUGALD'S ADM'R.

1. A deed from a Creek Indian reservee, under the treaty of March 24, 1832, after it has been approved by the President of the United States, conveys such title to the purchaser as will maintain an action of ejectment.
2. When a deed is made to two jointly, the law, in the absence of proof as to their respective interests, presumes that they are equally interested; and the transfer by one of them, by words *in præsenti*, of all his right, title and interest in the lands, conveys a moiety.
3. The administrator of an estate which has been declared insolvent has no right, under the statute, to bring ejectment for the recovery of lands belonging to the decedent.

ERROR to the Circuit Court of Russell.

Tried before the Hon. JNO. GILL SHORTER.

EJECTMENT by Jesse Wilkinson, as administrator of Daniel McDougald, deceased, against N. W. Long, the plaintiff in error, to recover an undivided moiety in section eight, township fifteen, range twenty seven, situated in the County of Russell. There was a verdict, and judgment thereon rendered, for the plaintiff below.

It appears from the bill of exceptions, that the said half-section of land was reserved to a Creek Indian, under the treaty of March 24, 1832; that the said reserve duly sold and conveyed the same to Fannin & Howell, on December 31, 1834; and that John D. Howell, in the name of Fannin & Howell, executed to McDougald the following instrument:

" For value received, I, John D. Howell, of Muscogee, and State of Georgia, do hereby assign, transfer and set over unto Daniel McDougald, of said county and State, all my right, title, claim and demand to a tract of land purchased by Fannin & Howell, designated as the north half of section number eight, in township number fifteen, of range number twenty seven, situate in the district of lands subject to sale at Montgomery, and request that a patent may be issued to said McDougald, his heirs or assigns. Witness my hand and seal, this first day of Feb'y, A. D. 1840."

(Signed)                                   FANNIN & HOWELL,
                              by JOHN D. HOWELL, [L. S.]

It was also shown that said McDougald had departed this life, and that his estate had been duly declared insolvent before the commencement of this suit. This was the plaintiff's title.

The defendants claimed under a tax collector's sale, and deed made in pursuance thereof. It appears that the land was advertised to be sold on Tuesday after the first Monday in August, 1849, but on that day the sale was publicly postponed until the first Monday in September; the advertisements in the newspaper and at the court-house door, were changed accordingly, and the land was then sold, on said first Monday in September.

Lease, entry, ouster and possession having been admitted, the plaintiff asked the court to charge the jury, that, if they believed all the evidence, they must find for the plaintiff; which charge the court refused to give, and charged the jury, that, if they believed all the evidence, they must find an undivided half

of said land for the plaintiff; to which charge the defendants excepted. The defendants then asked the court to charge the jury, that, if they believed all the evidence, they must find for the defendants; which charge the court refused to give, and the defendants excepted.

The charge given, and the refusal to charge as asked, are now assigned for error.

WHITE & PARSONS, for plaintiffs in error:

The first question presented is, whether the administrator of an insolvent estate can recover in ejectment, on the evidence disclosed by the record. The act of 1843 (Clay's Digest 192 § 2,) does not change the previous law; and it is certain that, before its passage, the administrator had no right to bring an action of this kind : it could only be brought by the heirs at law, upon whom the legal title is cast by operation of law, on the death of their ancestor.—7 Ala. R. 459. The ninth section of the act shows what rights vest in the administrator. The first section of the act of 1839 empowers him to rent the lands; and the act of 1820 authorizes him to apply for leave to sell real estate.—Clay's Digest 196, 199. The rule laid down in this court seems to be, that both the administrator and the heirs are necessary parties.—Jordan v. Abercrombie, 15 Ala. 580; Swan v. Driver, at this term, opinion by Gibbons, J.

The statute of 1843 does not give the administrator the right, even though the estate be insolvent, to sue in his own name for the recovery of the land. This suit, therefore, cannot be sustained by him.

The approved deed to Fannin & Howell, and the transfer by Howell of his interest in the land to McDougald, are not sufficient evidence of title to sustain this action. The words of the transfer do not purport to convey a title, for it requests the Government of the United States to issue a patent to McDougald; and where it is evident that the vendor did not intend to convey title, it has been held that the instrument amounted only to a bond for titles, though it contained the words "grant, bargain and sell."—Chapman v. Glassell, 13 Ala. R. 50.— What more is this instrument than that?

The postponement of the sale by the tax collector, as shown by the record, does not vitiate his deed, nor render it void. The

owner of the land ought not to be permitted to recover it, without paying the purchaser his money and interest. These sales for the purpose of raising revenue ought not to be set aside, unless wholly void.

Geo. D. Hooper and Belser & Rice, *contra :*

1. Administrator may sue in ejectment, when the decedent might have done so.—Masterton v. Girard, 10 Ala. 60.

2. Approved contract conveys title, as against any one not claiming through the Indian.—Jones v. Inge *et al.*, 5 Por. 331 ; Treaty found in 5 Porter 414.

3. As to the sale by the tax collector, mode of advertising, deed, &c. see the tax laws of 1848 and 1849.

4. Tax laws construed strictly.—Scales v. Alvis, 12 Ala. 619 ; Lyon *et al.* v. Hunt *et al.*, 11 Ala. 310 ; Pope v. Headen, 5 Ala. 434.

5. Plaintiff may recover a moiety.—Sawyer v. Fitts, 4 S. & P. 365 ; 2 Porter 9.

CHILTON, C. J.—The questions made upon the record are :

1. Does the deed of conveyance from the Creek Indian reservee, after it has been approved by the President of the United States, convey such title to the purchaser as will warrant ejectment ?

2. Does the written transfer in the name of Fannin & Howell, to McDougald, convey such legal estate in the land, or any portion of it, as entitles the purchaser to sue in this form of action ?

3. Has the administrator of an insolvent estate, under our statutes, the right to maintain an action of ejectment, to recover the lands of the decedent?

1. The first point is covered by the decision of our predecessors, in the case of Roper v. Bradford, 9 Por. Rep. 354 ; and although we might be disposed to question the correctness of that decision, were the question an open one, we must adhere to it, as having settled a rule of property, a departure from which might seriously unsettle the titles to lands in the country.

2. Fannin & Howell having such legal title as would sustain an ejectment, they had full power to sell and dispose of the

same to any other person. In the absence of proof as to the interest which each of them had in the land, the deed being made to both, the law raises the presumption that they were equally interested.

A transfer by words *in præsenti*, by Howell to McDougald, of all his interest, right and title to the land, given under the hand and seal of said Howell, operates a good conveyance of whatever legal title he had to McDougald, and he having a moiety, that moiety vested thereby in McDougald. The fact that he requests, in the transfer, that the United States should issue a patent to McDougald, is nothing more than an order or request to vest him with the *evidence* of the title, which already resided in him by the conveyance.

This transfer is altogether unlike the case of Chapman v. Glassel, 13 Ala. 50, for, in that case, the instrument relied on as a conveyance, not only purported to be a mere obligation to make title *in futuro*, but the vendee, by a cotemporaneous instrument, expressly admitted that it was a bond, and that certain payments were to be made by him before he could demand a title. There is nothing of the kind in the case before us.

3. Upon the third point we have had more difficulty. Ordinarily, when a party dies owning lands, they descend to his heirs at law, and to hold that his personal representative could sue for and recover them, would appear somewhat anomalous. In Phillips v. Gray, 1 Ala. 226, this court was called upon, for the first time, to construe the act of 1839, authorizing the administrator to rent the lands of the decedent until the final settlement. It is there said, "There can be no doubt, that, in all cases coming within the purview of this act after its passage, the right of the heir to enter upon, and enjoy the real estate of his ancestor, is intercepted in favor of the personal representative of the deceased, until final settlement of the estate." In Masterson v. Gerard's Heirs, 10 Ala. 60, this court held, that the administrator had the right to recover rent upon the demise of his decedent, but that, until he asserted the power given him by statute, by notice to the tenant, or by actual suit, the heir might sue for and recover rent falling due after the death of the ancestor; thus qualifying the doctrine as asserted by the judge who delivered the opinion in Phillips v. Gray, *supra*.

The construction of the act of 1839 again came before this

court, in Haskins v. Pope, 20 Ala. 493, in which case it was held, that the administrator was, under its provisions, authorized to receive rent accruing after the death of the intestate, on a lease made in his life-time, as he, if living, could recover for use and occupation. In delivering this opinion, also, the judge says: "It cannot be supposed the legislature intended, as between a former tenant and the administrator, that the latter should either have no power to evict, or recover rent."—20 *ib* 498.

In Upchurch v. Nosworthy, 12 Ala. 532, the court held, that an administrator had no right to the proceeds of the crops made upon the lands of his intestate, with the slaves of the estate, previous to the grant of administration; and it was left as a *quere*, whether he could not recover the value of the use of the slaves and other personal property. In delivering the opinion, the judge says: "The title to the land descended to the heir at law, subject to the entry of the administrator, for the purpose of renting it."—15 Ala. 534.

In Jordan v. Abercrombie & Thompson, 15 Ala. 580, it was held, that where, in an action of trespass to try title and recover damages, the plaintiff in error, against whom, as defendant in the court below, there was a verdict and judgment for the land and damages, died, it was necessary to revive the suit in the names of his personal representative and heirs at law. It was said, as the title to the freehold was in controversy, it was clear that the heir was the proper representative of the decedent as respected the land, and the administrator as to the demand evidenced by the judgment.—15 Ala. 582.

In Martin's Ex'r v. Williams, 18 Ala. 190, we held, that the power conferred by the statute to rent land was a special power, and must be executed in the manner pointed out by the act; that to entitle the administrator to the rents, as assets of the estate, it was essential that the land should have been rented at public outcry, as prescribed by the statute.

So, in Chighizola v. LeBaron, executor &c., 21 Ala. 406, it was held, that the statutes of this State authorizing the executor or administrator to sell or rent the lands of the testator, &c., do not, of themselves, intercept the passing of the estate to the heirs or devisees, who may assert their title, with all its incidents, until the executor exerts the power reposed in him by the statute; that the power to rent was a bare authority con-

ferred by the statute, and must be strictly pursued, and if the lands are not leased, according to the requisitions of the statute, at "public outcry," it is not a due execution of the power, and cannot be regarded in any manner as affecting the rights of the heirs or devisees.

The rule, which we think may fairly be extracted from the foregoing decisions, is, that upon the death of the intestate, the lands belonging to him descend to his heirs at law, who hold the legal title, subject to certain powers conferred by the several statutes on the administrator, as the right to rent them at public outcry, if the estate be solvent, until the final settlement ; and if it be insolvent, he is required, under pain of being guilty of a *devastavit*, to apply for leave to sell the lands to the Orphans' Court, within three months after the report of such insolvency.—Clay's Dig. 197 § 27. The administrator, as such, has no title whatever to the land, but only a power to rent, or, if so ordered by the probate court, a power of sale, which sale, when duly made, divests the title of the heirs, and vests whatever title the ancestor had in the purchaser.—Clay's Dig. 229 § 46. But the title of the heir is not divested until such sale and conveyance ; nor is his right of entry intercepted, until proceedings are commenced by the administrator, to subject such real estate to the payment of the debts.

The administrator may recover the rent accruing either before or after the death of the intestate, upon the demise of the intestate, but he cannot bring an ejectment to recover possession of lands belonging to an insolvent estate. He has no power over such lands, save as conferred by statute, and this gives him no authority to possess them, but merely to obtain an order for their sale, and to sell them. If any one is in the adverse possession, this does not invalidate such sale, as the doctrine of adverse possession does not apply to judicial sales.— Whether the administrator might not unite with the heirs in maintaining an action to recover the possession, in order to rent out the land, is a question not presented; for, here, the estate is insolvent, and in such case the land is to be sold, not rented, and this sale does not pre-suppose the necessity of possession in the administrator. He is the mere conduit, through whom the title passes from the heirs at law to the purchaser.

It follows, therefore, that the administrator of McDougald has

no such title as will enable him to maintain ejectment, and that the charge of the court was consequently erroneous.

We need not examine as to the validity of the tax collector's deed, since its validity or invalidity would in no wise affect the result.

Let the judgment be reversed, and the cause remanded.