# Landford *v.* Dunklin and Reese, Administrators.

### Statutory Real Action in the Nature of Ejectment.

1. *Jurisdiction of probate court to order sale of decedent's lands; character of; when decree can not be collaterally assailed.*—The jurisdiction of the court of probate to order a sale of a decedent's lands, for the payment of debts, or for distribution, being statutory, before it can be affirmed to exist, the record of the proceedings must affirmatively show that an application has been preferred by the personal representative, disclosing a statutory ground for the sale; but when the record shows that the court had acquired jurisdiction, irregularities or actual errors can not affect the validity of the proceedings, when collaterally assailed.

2. *Order of sale of decedent's land by probate court; conclusive of what facts.*—In granting such order the court is presumed to have adjudged every fact and question essential to the validity of the order, including the fact that the petitioner is the personal representative of the estate of the decedent whose land is ordered to be sold; and hence, the sale can not be impeached in a collateral proceeding, on the ground that he had ceased to be administrator before the proceedings were begun, or that the grant of letters to him was invalid.

3. *Grant of administration to sheriff; when not void.*—While it is irregular to grant letters of administration upon a decedent's estate to the

[Landford v. Dunklin and Reese, Administrators.]

sheriff or coroner, when there is a general administrator capable of act-
ing, unless, in the particular case, there are facts and circumstances
which render it improper to commit the administration to him, such ir-
regularity does not render the grant void, or subject it to attack in a col-
lateral proceeding.

4. *Jurisdiction of probate court to grant administrations, general, not
limited.*—The jurisdiction of the probate court to grant administrations
is derived from the constitution, and is general and unlimited; and when
its grants of administration are drawn in question collaterally, they are
protected by the presumption extended to the judgments and decrees of
all courts of general jurisdiction.

5. *Right of personal representative to bring ejectment.*—The effect of our
system, subjecting lands descended or devised to administration, render-
ing them liable to the payment of the decedent's debts, and conferring
upon the personal representative power to rent them, and to intercept
the descent, or defeat the devise, by sale under the order of the probate
court, is, that the personal representative is entitled to maintain any ac-
tion at law for their recovery that the heir or devisee can maintain; the
right of the heir or devisee yielding to the right of the personal repre-
sentative when he elects to assert it.

6. *Sale of lands by personal representative; when title of the heirs or
devisees not divested.*—Under a sale of lands by a personal representative,
made in pursuance of a decree of the probate court, the title of the heirs
or devisees is not divested, until a conveyance is executed by the order
of the court; and hence, a conveyance of the lands, executed by the
personal representative without such order, is wholly inoperative in a court
of law.

7. *Same; when administrator de bonis non may maintain ejectment.*
Where lands were sold by an administrator in chief under a valid order
of the probate court, and the purchase-money was afterwards paid, but
no report of its payment was made, and no order was entered directing
a conveyance to the purchaser, the administrator executing a deed with-
out such order, the legal title to the lands did not thereby pass to the
purchaser, and an administrator *de bonis non* can maintain ejectment
against the purchaser for the recovery thereof.

8. *Grant of letters of administration to sheriff expires with the term of
office.*—The grant of letters of administration to a sheriff *virtute officii*, by
the express language of the statute, attaches to the office; and the grant
expires with the expiration of his term of office as sheriff.

9. *Rule of statutory construction.*—No rule of statutory construction
rests upon better reasoning than that, in the revision of statutes, altera-
tion of phraseology, the omission or addition of words, will not necessa-
rily change the operation or construction of former statutes; but to have
this effect, the language of the statute as revised, or the legislative in-
tent to change the former statute, must be clear.

10. *Same; statute providing grant of administration to sheriff or coro-
ner construed.*—The words, "and not to the person," as used in the act
of December 24th, 1822, declaring that a former statute authorizing the
grant of letters of administration to the sheriff or coroner should be
strictly construed, and that the administration should attach to the office,
*and not to the person,* were employed in the abundance of legislative cau-
tion; and hence, the omission of these words from the statute as codified
in the Code of 1852, and the Codes subsequently adopted, does not change
the operation or construction of the statute.

11. *Grant of administration to sheriff; when no order of revocation re-
quired to create vacancy.*—A grant of letters of administration to a sheriff
*virtute officii* expiring with the termination of his official term, no subse-
quent order of revocation is required to create a vacancy; and hence, a
grant of administration *de bonis non*, made after his office had expired,
without any formal order revoking his letters, is valid.

[Landford v. Dunklin and Reese, Administrators.]

APPEAL from Lowndes Circuit Court.

Tried before Hon. JOHN MOORE.

This was a statutory real action in the nature of ejectment, brought by C. E. Reese and E. C. Dunklin, as the administrators *de bonis non* of the estate of Josiah W. Cowling, deceased, against certain tenants of R. N. Landford, who were in possession of the land sued for at the commencement of the suit; and was commenced on 24th March, 1881. Landford came in and made himself a party defendant, and the cause was tried on issue joined on the plea of not guilty; the trial resulting in a verdict and judgment for the plaintiffs.

There was no conflict in the evidence introduced on the trial, and the facts disclosed thereby are substantially as follows: Josiah W. Cowling departed this life, intestate, prior to the year 1868, seized and possessed of about twelve hundred acres of land situate in Lowndes county, in this State, a part of which is the land sued for in this action, and also of some personal property; and leaving him surviving a widow and several children. At the time of his death he was a resident of said county. In 1868, William H. Hunter was elected sheriff of the said county of Lowndes, and duly qualified as such by giving bond with sureties, and taking the oath of office required by law; and he exercised the functions of said office of sheriff until the 11th day of November, 1871, when his term of office expired. One Bryan became Hunter's successor in the office of sheriff, and continued therein until the expiration of his term, November, 1874, when another was elected, who continued in said office during his term. On the 5th January, 1869, said Hunter, by virtue of his office as sheriff, was appointed administrator of the estate of Josiah W. Cowling, deceased, by the probate court of said county, and he thereupon took possession of the real and personal property belonging to said estate, "and made inventories thereof, and duly returned and reported the same to said probate court." On the 11th April, 1870, the estate of the decedent was duly declared insolvent by said court, on the report of said Hunter, as administrator. No selection of administrator was made by the creditors, and Hunter, without any formal order of said court, continued to act as the administrator of said estate. On the 28th October, 1872, on the application of Hunter, as the administrator of said estate, and proceedings regularly had for that purpose, the court granted an order for the sale of certain lands belonging to· the estate, embracing the lands sued for; the order requiring "said Hunter, as such administrator, to sell said lands on the following terms, viz: One-third cash, and the balance in two equal annual installments." Under this order a sale was made in 1872, but, on report thereof, it was set aside by the court, and a new sale

ordered. On the 3d January, 1876, Hunter, as such administrator, made sale of the lands sued for, and at the sale one Tyson became the purchaser at a stated price, one-half payable in cash, and the balance on one year's time, with good security. This sale was reported to the court by Hunter, as such administrator, but no order was made, either confirming or disaffirming it. Afterwards, on the maturity of the balance due on the purchase-money, it was paid to said Hunter, as such administrator; "but no order to make titles had been made by said court. Said Hunter, as such administrator, made title to said Tyson on 3d January, 1877." Tyson took possession of the lands purchased by him at the sale, and held the same until he sold and conveyed them to the parties under whom the defendant claimed title by purchase and conveyance.

" On 11th March 1880, the said probate court, without any notice to Hunter, appointed the plaintiffs administrators *de bonis non* of said estate. There has never been any revocation of the letters of administration granted to said Hunter in 1869. There was never any order removing said Hunter from the administration of said estate, and there was no resignation of the office of administrator by said Hunter, who is still alive.

"It was in evidence that John Tyson had been appointed general administrator for the county of Lowndes in 1867, and that he had accepted said office and had qualified as such general administrator, and that he continued to hold the office of general administrator until 1875. There was no application by said Tyson to administer on the estate of said J. W. Cowling, and there was no application by said Bryan for said estate to be committed to him; and said Bryan never acted as administrator of said estate, and never claimed any right to administer thereon, whilst he continued to be sheriff of said county. There was never any order of the said probate court, committing the estate of the said Cowling to any other person than to said Hunter, until the appointment of the plaintiffs, in March, 1880. There was evidence showing the value of the rents of the land sued for. The plaintiffs have never been in possession of said lands."

Other acts by Hunter, as administrator of said estate, were shown by the evidence. On 2d October, 1871, he sold under an order of the probate court other lands belonging to the estate to one Farley, partly for cash, and balance on time. This sale he reported to the court on 18th November, 1871, and his report and the sale were duly confirmed. In 1872 and 1873, he collected the deferred installments of the purchase-money for the lands sold to Farley; and, on 2d October, 1873, he reported the payment thereof, and asked an order to make titles. This order was granted in January, 1874, and he executed a

deed to Farley in accordance therewith. In 1873, he made a partial settlement as such administrator, in which he charged himself with the amount he had then collected from Farley. In 1878, and again in 1879, he was ordered by said court to make a final settlement of his administration on said estate; but he never made any final settlement thereof.

The foregoing being the substance of the evidence, the court charged the jury, at the written request of the plaintiffs, that if they believed the evidence, they must find for the plaintiffs; and refused to charge the jury, at the written request of the defendant, that if they believed the evidence, the plaintiffs were not entitled to recover, and that their verdict should be for the defendant. To these rulings the defendant duly excepted; and they are here assigned as error.

WATTS & SONS, for appellant.—(1) The statute very clearly defines the only cases in which the court of probate has jurisdiction to grant administration *de bonis non;* these cases are where the "sole executor, or all of the executors or administrators die, resign, or are removed."—Code, 1876, § 2412. It is essential to the validity of a subsequent grant of letters, that the first should have terminated.—*Matthews v. Douthitt,* 27 Ala. 273; *Rambo v. Wyatt,* 32 Ala. 363; *Nelson v. Boynton,* 54 Ala. 368; *Griffith v. Frazier,* 8 Cranch, 9; *Hooper v. Scarbrough,* 57 Ala. 510. Hunter's letters were never revoked, and he never resigned as administrator of the estate of Cowling. Unless, therefore, the expiration of his term of office as sheriff put an end to his right to further administer the estate, the appointment of Dunklin and Reese as administrators *de bonis non* was void, and they can not maintain this suit.—*Matthews v. Douthitt, supra.* The want of jurisdiction to make the appointment may be shown even on a collateral attack.—*Gray's Adm'r v. Cruise,* 36 Ala. 559; *Kingsbury v. Yniestra,* 59 Ala. 320. The presumption in favor of the jurisdiction of the court to make the appointment is rebutted by the facts disclosed by the record. (2) This action can not be maintained unless the orders granted to Hunter, as administrator, after the expiration of his term of office, as sheriff, are absolutely *void.* At common law administrators *de bonis non* had no interest in any property belonging to the estate, except such as remained *unadministered* by their predecessors. Our statutes have enlarged their rights and duties to some extent; but still they can not sue for personal property which has been disposed of in the due course of administration by the administrator. It is only when the disposition made by the administrator in chief is wholly void, for illegality or fraud, that the administrator *de bonis non* can sue to recover back the property disposed of.—*Swink v. Snod-*

*grass,* 17 Ala. 653.   Both at common law and under the statute lands of an intestate descend to his heirs, the legal title vesting and remaining in them, unless divested by legal proceedings, or by conveyance.   It is true that the powers conferred by statute on an administrator touching his intestate's realty, enable him to maintain ejectment; but this results, not from their having the legal title, but from the fact that the statute confers on them the right of immediate possession, and that is deemed equivalent to the legal title for the purposes of the suit.   The legal title still remains in the heirs, and is not divested until a *deed is made* by the order of the probate court, although a regular order of sale has been obtained, and a sale made under it, and confirmed by the court.—*Hamilton v. Hardy,* 52 Ala. 291. But if the administrator in chief has exercised this paramount statutory power, and has obtained an order of sale, has made a sale under the order, and the sale has been confirmed, and the purchaser let into possession, it is certain the administrator in chief could not sue the purchaser for possession of the lands thus sold.   The legal title being in the heirs, and the right of immediate possession having been transferred by the sale to the purchaser, and the purchaser thus having the right to possession, the administrator who had sold to such purchaser would have no semblance of right to recover the possession, whatever right the heirs might have at law by and through the strength of their legal title.   If the administrator in chief could not maintain such a suit, the administrator *de bonis non* can not maintain it. It is only when the disposition of the property made by the administrator in chief is void, that the administrator *de bonis non* can assert the rights of the estate.   (3) The question, then, is narrowed down to this :  Was the sale made by Hunter to Tyson *void,* not merely voidable.   Whether the sale was void depends on the further question, whether Hunter was the administrator of the estate at the time the order of sale was granted.   (4) His appointment as administrator was not *void* because there was a general administrator of the county at the time the estate of Cowling was entrusted to him.—*Coltart v. Allen,* 40 Ala. 155.   (5) Did his office of administrator *ipso facto* cease at the termination of his office of sheriff?   If the expiration of the office of sheriff did not *ipso facto* put an end to Hunter's right to administer the estate, but was merely cause for his removal from the administration, then, so long as he was permitted to exercise the functions of administrator without resignation or removal, his acts as such administrator were valid, and they can not be attacked collaterally by any successor in the administration of the estate.   (6) It was then contended, in an elaborate argument, that Hunter's right to administer the estate of Cowling did not cease, *ipso facto* and *eo instanti,* on the expiration of his

term of office as sheriff, and the following statutes and authorities were cited and discussed on this point: Code of 1876, §§ 2363, 2364, 2372, 2373, 2376; Clay's Dig. p. 223, § 10; *Governor v. Davis*, 9 Ala. 917; *McLaughlin v. Nelms*, 9 Ala. 925; *Ragland v. Calhoun*, 36 Ala. 606; *Jennings v. Moses*, 38 Ala. 402; *Duke v. Cahaba Nav. Co.*, 16 Ala. 372; *Harrell v. Ellsworth*, 17 Ala. 576; *Sprowl v. Lawrence*, 33 Ala. 674; *Lehman, Durr & Co. v. Warner*, 61 Ala. 455; *Hill v. State*, 1 Ala. 559; *King v. Griffin*, 6 Ala. 387; *Hooper v. Scarbrough*, 57 Ala. 510; *Mosby's Adm'r v. Mosby*, 9 Gratt. 600; *Hutcheson v. Priddy*, 12 Gratt. 85; *Cocke v. Harrison*, 3 Randolph, 494; *Dabney v. Smith*, 5 Leigh, 13; 1 Lomax on Ex'rs, p. 379, §§ 24–5; *Beale v. Hall*, 22 Ga. 449; *Rogers v. Haberlein*, 11 Cal. 120; *Hull v. Neal*, 27 Miss. 424; *Wilson v. Dibble*, 16 Fla. 782; *Davis v. Shuler*, 14 Fla. 438; *Frye v. Kimball*, 16 Mo. 9; *Dwight v. Simon*, 4 La. An. 490; *Thomas v. Adams*, 10 Ill. (5 Gilm.) 319; *Matter of Hamilton's Estate*, 34 Cal. 468; *Levi v. Huggins*, 14 Rich. (S. C.) 166. (7) It may be, that, under our statutes, the judge of probate would have the right to revoke, on the expiration of the term of the office of sheriff, without giving the sheriff notice. It may even be presumed, in a collateral proceeding, that the plaintiffs were properly and legally appointed administrators *de bonis non;* and it may be presumed that the judge of probate revoked Hunter's letters of administration before he appointed Dunklin and Reese. But until this appointment, the presumption is, that the judge of probate never exercised his right to revoke, and that Hunter rightfully continued as administrator until that time. There is no fact showing that the probate court took any judicial action until that time; but, on the contrary, the facts show that, in various ways, and by unequivocal acts, the court recognized Hunter as the rightful administrator down to the time of the appointment of Dunklin and Reese. The only organ of the State whose duty it is to declare who was the administrator, did declare Hunter to be the administrator, after the expiration of the term of the sheriff's office, down to the time of the appointment of the plaintiffs as administrators *de bonis non.* What right, then, did the purchasers have to dispute the authority of Hunter to still exercise the powers and duties of administrator, before any judicial action was taken, declaring that he had ceased to be the rightful administrator? (8) It will be observed that the estate of Cowling was decreed to be insolvent on the application of Hunter, while he was sheriff. There is no dispute or controversy about the validity of this decree, or of its effect. The creditors of the insolvent estate made no selection of an administrator, as they had a right to do, and no one was appointed; but Hunter con-

[Landford v. Dunklin and Reese, Administrators.]

tinued to act as administrator, and was recognized as administrator by the court. In such case no new appointment was necessary, nor was there any necessity for an order of the court continuing Hunter as administrator. The presumption is that he was continued by a proper order.—*Clay v. Gurley*, 62 Ala. 14. If, then, it be conceded that the sheriff, to whom has been committed a solvent estate for administration, would cease to be administrator at the expiration of his office as sheriff; yet, a different rule would apply, when the estate is declared insolvent, and the creditors make no selection of an administrator, and the administrator in chief is continued by the court as the administrator of the insolvent estate.

CLOPTON, HERBERT & CHAMBERS, *contra.*—(1) Section 2000 of the Rev. Code, 1867, the statute in force when Hunter was appointed administrator of the estate of Josiah W. Cowling, provides for the appointment of a general administrator of the county. Section 2001 of same Code provides: "*In case there is no general administrator*, and no other fit person will administer, the court *may commit* administration to the sheriff or coroner of the county." At the time the administration was committed to Hunter, there was a general administrator of Lowndes county, who continued in office until 1875. This being the fact, was the order committing the administration to Hunter, as sheriff, void? It has been repeatedly held, and can not, and ought not now to be questioned, that the constitution confers on the probate court original, general and unlimited jurisdiction of the grant of administration, creating it, as to that matter, a court of general jurisdiction. Its orders, therefore, as to the grant of administration, are, when collaterally assailed, protected by the presumption extended to the judgments of all courts of general jurisdiction; and it is not necessary for the record to affirmatively show the ascertainment of the jurisdictional facts. This presumption, however, when the record is silent as to the ascertainment of the jurisdictional facts, and their ascertainment is implied from the mere exercise of jurisdiction, is not conclusive. When the record shows affirmatively that the court in fact ascertained the existence of the jurisdictional facts, this ascertainment is *res adjudicata*, and can not be controverted on a collateral attack, although those facts did not exist. But where the record is silent as to the ascertainment of those facts, then they "will be conclusively presumed to have been ascertained, *unless the record affirmatively discloses the contrary.—Burnett v. Nesmith*, 62 Ala. 261. The probate court has general jurisdiction of the grant of administration *de bonis non*. There is no distinction between the character of the jurisdiction which it exercises over the appointment of ad-

[Landford v. Dunklin and Reese, Administrators.]

ministrators in chief and of administrators *de bonis non.*—*Rambo v. Wyatt,* 32 Ala. 363. Whilst, therefore, it has been held that it is essential to the validity of a grant of administration *de bonis non,* that the preceding administration should have become vacant by the resignation, death, or removal of the former administrator, it has also been held that it is not necessary that the record of the grant of administration *de bonis non,* when involved in a collateral proceeding, should affirmatively show such vacancy. But the order granting letters of administration *de bonis non* is not *conclusive* evidence of the jurisdiction of the court in the particular case. If, in point of fact, there was no vacancy in the administration when the order was made, the appointment will be held *void,* even in a *collateral* proceeding.—*Gray's Adm'r v. Cruise,* 36 Ala. 559, and authorities there cited. The jurisdiction of committing an administration to the sheriff, and of grant of administration *de bonis non,* is of the same character; and the order committing an administration to the sheriff is not *conclusive* evidence of the jurisdiction of the court. If, in point of fact, there was a general administrator when the order was made, it will be held *void,* even in a collateral proceeding. Another consideration in support of this conclusion is, that when a court of *general* jurisdiction has a special authority conferred on it by statute, it is, *quoad hoc,* an inferior or limited court.—*Gunn v. Howell,* 27 Ala. 663, and authorities there cited; *Foster v. Glazener,* 27 Ala. 391; *Wyatt's Adm'r v. Rambo,* 29 Ala. 510. The power of the probate court to commit an administration to the sheriff, as *sheriff,* thereby making the sureties on his official bond liable for the administration of the estate so committed to him, is a *special authority conferred by statute* upon a court of general jurisdiction after grant of administration; and, therefore, *quoad hoc,* its jurisdiction is limited. (2) It was further contended in an elaborate argument, that Hunter's administration closed at the expiration of his term of office as sheriff; and the following statutes and authorities were cited and discussed on this point: Laws of Ala. p. 196, § 17; *Ib.* pp. 203, 205, § 15; Clay's Dig. § 10; Code of 1852, § 1681, 1690; Code, 1876, § 2376; *King v. Griffin,* 6 Ala. 387; *Saltonstall v. Riley,* 28 Ala. 164; *Ragland v. Calhoun,* 36 Ala. 606; *Payne v. Thompson,* 48 Ala. 535; *Rambo v. Wyatt,* 32 Ala. 363; *Farrow v. Bragg,* 30 Ala. 261; *Bondurant v. Buford,* 1 Ala. 359; *Plowman v. Henderson,* 59 Ala. 559; *Governor v. Pearce,* 31 Ala. 465; *Cuthbert v. Huggins,* 21 Ala. 349; *Morgan v. Ramsey,* 15 Ala. 190; *McCollum v. Hubbert,* 13 Ala. 289; *Bondurant v. Thompson,* 15 Ala. 202; *Levi v. Higgins,* 14 Rich. 166. (3) The cases in this State, cited by counsel for appellants, are not decisions upon the right of *the person* filling the office

[Landford v. Dunklin and Reese, Administrators.]

of sheriff, to whom an administration has been committed in virtue of such office, to continue to exercise the powers of administrator after the expiration of his official term, but are decisions as to *the remedies* against the sheriff, as administrator *ex officio*, and the sureties on his official bond. The distinction is between AUTHORITY and *remedy*. And the various cases from Virginia, Georgia, Mississippi, Florida, and California, cited by them, are upon statutes unlike ours in this, that there is no declaration, *that the administration attaches to the office;* and they are, therefore, inapplicable. Besides, these decisions were in respect to the liabilities of the officer and his sureties, in which it was not necessary to decide when the administration ceased. (4) Some stress is placed upon the recognition and treatment, by the probate court, of Hunter as administrator after the expiration of his official term. Such recognition, of itself, can not operate as a grant of administration. Both the acts of Hunter and the recognition by the court, concurring, can not, *proprio vigore*, operate as such grant, any more than if he had never been appointed administrator. His acts under such recognition might estop him from denying that he was administrator, but they can have no other effect. Counsel lose sight of the difference between a *grant* and *an estoppel.* (5) It is, however, further contended, that a different rule applies, when the estate is declared insolvent, and the creditors make no selection of an administrator, and the administrator in chief is continued by the court as the administrator of the insolvent estate. But the estate was declared insolvent upon Hunter's report, *eighteen months before the expiration of his official term.* He was never required to appear and make a settlement, as provided by law in such cases, and the time never occurred when the creditors were authorized to select. The law having terminated his administration, the insolvency proceedings could not continue it in force. (6) After the expiration of his official term as sheriff, Hunter could not be regarded as an administrator *de facto. Hooper v. Scarbrough,* 57 Ala. 510.

BRICKELL, C. J.—The jurisdiction of the court of probate to order and decree the sale of lands descended or devised, for the payment of the debts of the ancestor or testator, or to make equal distribution to and among heirs or devisees, is derived from statute. Before it can be affirmed that jurisdiction exists, the record of the proceedings of the court must show affirmatively that a proper application, an application showing the necessity for the sale, has been preferred by the proper party. The only party having capacity to prefer the application is the personal representative. When, by the proper party, the application is preferred, stating or averring the facts which authorize the

court to exercise jurisdiction, by operation of law jurisdiction is acquired; and if jurisdiction is acquired, irregularities, or even actual errors may intervene, without affecting the validity of the proceedings when drawn in question collaterally. The court is presumed to have adjudged every fact and question essential to the validity of the order or decree. Within its jurisdiction and duty rests the decision of every question occurring in the cause, and whether the decision be correct or erroneous, it is binding on every other court, until reversed by a court of appellate jurisdiction, upon a direct proceeding for its reversal. The court of probate, in decreeing the sale of the lands in controversy, adjudged, and was bound to adjudge, that the petitioner, Hunter, was the administrator of the intestate, Cowling; that the personal estate of the intestate was insufficient for the payment of his debts, and for that purpose there was a consequent necessity to sell the lands.—*Florentine v. Barton*, 2 Wall. 210; *Grignon v. Astor*, 2 How. 319.

The fact that Hunter was, as he averred, the administrator of the intestate, that he was the proper party to make the application for the sale, is as immediately involved, adjudged, and finally adjudged, in the decree of sale, as is the fact of the insufficiency of the personal estate for the payment of debts. The one fact is not more open to evidence and controversy, when the proceedings are assailed collaterally, than is the other. If in either aspect the decree is opened, the facts again litigated, the finality and conclusiveness of the decree are impaired, and all security in performing it is destroyed. Upon this ground I am, therefore, of opinion, that in this case there can be no inquiry whether Hunter was, or not, administrator, when he filed the application and obtained the decree for the sale of the lands.

There was a grant of administration to Hunter, as sheriff, and its validity is now drawn in question, because at the time of the grant there was a general administrator of the county. The statutes manifestly contemplate that the court of probate, in committing administrations, shall prefer the general administrator to the sheriff or coroner. And it is irregular to appoint the sheriff or coroner, while there is a general administrator capable of acting, unless in the particular case there may be facts and circumstances which would render it improper to commit the administration to him. The irregularity may render the grant subject to revocation, voidable, but not void.—*Burnett v. Nesmith*, 62 Ala, 261; *Burke v. Mutch*, 66 Ala. 568.

The jurisdiction of the court of probate to grant administrations is derived from the constitution, is general and unlimited; and when its sentences are drawn in question collaterally, they are protected by the presumption extended to the judgments

and decrees of all courts of general jurisdiction.—*Coltart v. Alen*, 40 Ala. 155; *Russell v. Erwin*, 41 Ala. 292; *Curtis v. Williams*, 33 Ala. 570.

The statutory system subjecting lands descended or devised to administration, rendering them liable to the payment of the debts of the ancestor or testator, conferring upon the personal representative authority to rent them, or to intercept the descent, or the taking effect of the devise, by obtaining from the court of probate a decree to sell them for the payment of debts, or to make equitable distribution to and among the heirs or devisees, has long been construed as vesting in the personal representative the right and capacity to maintain all necessary suits to recover possession of them—*Philips v. Gray*, 1 Ala. 226; *Masterson v. Gerard*, 10 Ala. 60; *Long v. McDougald*, 23 Ala. 413; *Golding v. Golding*, 24 Ala. 122; *Russell v. Irwin*, 41 Ala. 292.

In *Long v. McDougald, supra*, the court held the representative of an insolvent estate was not entitled to maintain ejectment to recover the possession of the lands of the intestate or testator. The decision induced the enactment of the statute, now embraced in the Code, conferring on the representative of an insolvent estate the capacity and right to maintain any action for the recovery of lands, which could be maintained if the estate were solvent.—Code of 1876, § 2588. The effect of the statutory system, and the result of the decisions, is, that the personal representative, because of the authority over the lands with which he is clothed, is entitled to maintain any action for the recovery of lands, which the heir or devisee can by the common law maintain. The right of the heir or devisee yields to the right of the personal representative when he elects to assert it.—*Tarver v. Smith*, 38 Ala. 135.

The bill of exceptions shows directly and affirmatively that Hunter, as administrator, made sale of the lands upon terms different from the terms prescribed in the decree of sale; that he reported the sale to the court of probate, and it was confirmed. Subsequently, the purchase-money was paid to him, and he executed a conveyance to the purchaser. The confirmation of the sale may have purged the irregularity of a sale upon terms different from the terms prescribed in the decree. That question we do not now consider. But Hunter made no report to the court of probate of the fact that the purchase-money had been paid; nor was any application made to the court for an order directing a conveyance to the purchaser; nor did the court order such conveyance. The present statutes, conforming substantially to the pre-existing statutes, require the personal representative making sale of lands, under an order or decree of the court of probate, to report the sale to the court for con-

firmation. If the sale is confirmed, then, upon the application of the purchaser, or of the personal representative, showing the payment of the whole of the purchase-money, the court is required to order the personal representative, or such other person as the court may appoint, to make to the purchaser a conveyance "of all right, title and interest which the deceased had in the lands at the time of his death."—Code of 1876, § 2468.

The title of lands is never in abeyance; and it is self-evident the statutes intend that the title shall remain in the heirs or devisees, to whom it passed by operation of law, until by a conveyance, executed under the order of the court, it is divested, and vested in the purchaser. Without the order of the court to execute the conveyance, the personal representative has no authority to execute a conveyance which will pass the title. The court is the vendor, not the personal representative, and may in its discretion appoint some other person than the representative to execute the conveyance.—*Hutton v. Williams,* 35 Ala. 503. It is settled by a long line of decisions in this court that under a sale of lands made in pursuance of an order or decree of the court of probate, the title of the heirs or devisees is not divested until a conveyance is executed by the order of the court. A conveyance executed without such order, in a court of law, is wholly inoperative.—*Lightfoot v. Doe,* 1 Ala. 475; *Cummings v. McCullough,* 5 Ala. 324; *Perkins v. Winter,* 7 Ala. 854; *Wallace v. Hall,* 19 Ala. 367; *Bonner v. Greenlee,* 6 Ala. 411; *Doe v. Hardy,* 52 Ala. 291.

The title of the lands remaining in the heirs, the appellees, if the personal representatives of the intestate, were entitled to maintain this action. The administration committed to Hunter was committed to him in his capacity of sheriff; in the words of the statute, it was "attached to the office." The grant of administration to the appellees was made near ten years after the expiration of Hunter's term of office as sheriff by constitutional limitation. The question is whether, with the expiration of his term of office as sheriff, the grant of administration to him in the capacity of sheriff expired?

The first statute authorizing the grant of administration to sheriffs or coroners was enacted in 1821, and provided that if, within three months after the death of any person, no one should have qualified as executor or administrator, or if an administration had become vacant, the judge having jurisdiction could commit the administration to the sheriff or coroner of the county, and unless the judge otherwise ordered, no other oath, bond or security was necessary, than the oath of office already taken and the bond already given. The official bond became a security for the performance of the duties and trusts of the administration.—Laws of Ala. 196, § 17. An amendatory act

was passed December 24th, 1822, taking effect from and after
January 4th, 1823, declaring the statute was to be strictly con-
strued so as to attach the administration to the office of sheriff
or coroner, and not to the person.—Laws of Ala. 205, § 15. The
administration was subject to be revoked at any time, on the
application of the executor, or of any of the kindred or cred-
itors of the decedent, and the executor, or an administrator,
permitted to qualify. These statutes remained of force until
the Code of 1852 was adopted and became operative.—Clay's
Digest, 222, § 10. That Code authorized the appointment of
a general administrator in each county, to take charge of the
estates of deceased persons, or to act as special administrators
in those cases in which the persons entitled would not admin-
ister, and no other person was appointed by the court.—Code of
1852, § 1680. It was also provided that, "in case there is no
general administrator, and no other fit person will administer,
the court may commit administration to the sheriff or coroner
of the county." It was further provided that, "when the
sheriff or coroner is appointed administrator, the administration
attaches to the office, and the official oath and bond of such offi-
cer are the security for his faithful administration." These
statutes are now embodied in the Code of 1876, forming sec-
tions 2362, 2363 and 2372.

The original and the present purpose of these statutes is, to
avoid vacancies in the administration of estates, from which
injury would result to creditors, and to legatees or heirs, or the
next of kin, having the ultimate and beneficial interest in the
assets subject to administration. The existence of an adminis-
tration under the authority of law and the appropriate tribunal,
should not rest in the mere choice or discretion of the execu-
tors nominated by the will, or of the next of kin, or of lega-
tees, or of creditors having a preferred right to it; or depend
upon the fact that for the administration a fit person applies to
the court. Therefore, the statutes have empowered the court
to appoint a general administrator for the county, who by the
acceptance of the appointment is bound to accept the adminis-
tration of all estates committed to him; or if such an adminis-
trator is not appointed, or has ceased to act, or there is in the
particular instance impropriety in his appointment, may devolve
the administration upon the sheriff or the coroner, who are
bound to its acceptance and the discharge of its duties and
trusts, as to the performance of any other duty which may be
by law imposed upon him.

The office of sheriff does not owe its origin to legislation, nor
derive existence from the common law. For it all our consti-
tutions have made express provision, defining with precision
and exactness the duration of the official term, and, with the

exception of a slight change in the present constitution, rendering the sheriff ineligible to serve either as principal or deputy for two successive terms. The duties and the authority of the office are of legislative creation, or drawn from the common law. And of much of the administrative or executive power belonging to the office at common law the sheriff is divested, not by express legislation, but by the transfer of such power to other offices and officers, or because its exercise would be inconsistent with our institutions. The constitution establishing the office of sheriff, defining precisely the duration of the official term, legislative power may be plenary to prescribe the scope and extent of official duty, but it is incompetent to extend or abridge the term of office as fixed by constitutional limitation. Cooley on Con. Lim. 76, and notes. All statutes prescribing the official duties of sheriffs are to be read and construed in connection with the constitutional limitation of the term of office, and can not admit of a construction, without infringing the constitution, which would extend the duty or authority of the sheriff beyond that term. If it were possible, under the act of 1821, that a grant of administration to a sheriff was capable of a construction that would have extended his duty or authority beyond the constitutional term of office, or of a construction that it was a grant to the individual filling the office of sheriff, and designating him as sheriff was mere *descriptio personæ*, the legislative intention to avoid and repudiate such construction is clearly manifested by the act of 1822, declaring the act of 1821 was to be strictly construed, not in any and every respect, but in a specified and particularized respect, which is clearly expressed—"so as to attach the administration to the office of sheriff or coroner, and not to the person." In no other respect, for no other purpose, was the act of 1821 modified, changed or amended. Engrafting upon the act of 1821 this particular provision, that the grant of administration was attached to the office of sheriff or coroner, excluding all idea that it was attached to the person, was the whole office and purpose of the act of 1822. The statute was thereby harmonized in words (and all possibility of any other construction excluded) with the constitution and with its policy, prohibiting the sheriff from serving for two successive terms, and this was the legislative intention. The administration, when committed to the sheriff, is an official duty. For the faithful performance of its trusts, the oath of office and the official bond are the security. Now, if authority and duty as administrator were by legislation extended beyond the constitutional term of office, where is the inhibition upon legislative power to extend official authority and duty, as to other statutory duties imposed, or statutory authority conferred, beyond that time? For what length

of time can such duty and authority be continued? Of what value, or, in view of our legislation, how limited in operation is the mandatory provision of the constitution, of full force when Hunter's term of office as sheriff commenced and expired, that for two successive terms a sheriff should not serve as principal or deputy?

The legislative intention that the grant of administration should attach to the office, continue with it, and expire with it, seems to us plain, and incapable of any just, reasonable doubt. The history of the statutes, to which we have referred, indicates it clearly. The express declaration that the grant should attach to the office, is the equivalent of a declaration that it shall not survive the office. The grant is the appurtenant of the office, and when by constitutional limitation the term of office expires, there is not in it a capacity to survive that to which it was attached, that of which it was the appurtenant, the mere appendage.

The statute, as embodied in the Code, is changed in phraseology, words are omitted which were found in the former statute; but there is no indication of a legislative intent to change or to modify the former statute—certainly not to vary the effect of the administration committed to the sheriff or coroner. No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation. Sedgwick, Stat. & Con. Law, 428; *Goodell v. Jackson*, 20 (N. Y.) John. 722; *Theriat v. Hart*, 2 Hill, 380; *Conger v. Barker*, 11 Ohio St. 1.

It may well have been supposed by the legislature, that as there was an express declaration the administration should attach to the office of sheriff or coroner, it was not necessary the words of the former statute, "and not the person," should be continued. These words were employed originally merely in the abundance of legislative caution. The expression that the "administration should attach to the office," of itself, excluded an attachment to the person. We can not doubt that a grant of administration to a sheriff does not endure beyond his official term, that by operation of law it expired with the term. Such was the opinion expressed by the court in *Ragland v. Calhoun*, 36 Ala. 606. It may be, the case did not necessarily require the question to be decided; but the expression of opinion was positive, was not hasty, and the result, manifestly, of deliberation. The authorities in other States, sup-

39

posed to reach a different conclusion, to which we have been referred, will be found to depend upon statutory provisions essentially different from our statutes.

It is lastly urged, that though the grant of administration to Hunter may have expired with his term of office, the court of probate could not grant a second administration until there was a revocation of the former grant. This is supposed to be the effect of the statute declaring that "letters testamentary, or of administration, and letters appointing a special administrator, or to any general administrator, sheriff or coroner, granted by any probate court having jurisdiction, are conclusive evidence of the authority of the person to whom they are granted from the date thereof until the same are revoked," etc.—Code of 1876, § 2376. By the common law all letters testamentary, or of administration, granted by the tribunal having jurisdiction, and the nature of the administration, whether it be temporary or limited, original or *de bonis non*, is unimportant, were, within the sovereignty from which they emanated, conclusive evidence of the authority of the person to whom they were granted.—1 Greenl. Ev. § 550. Of course, when revoked, they ceased to exist, and were not evidence for any purpose, unless it was of their former existence. Like many other sections of the Code, this section is merely affirmatory and declaratory of the common law. It is not capable of a construction which would extend the authority of an executor or administrator beyond the time appointed by law for its expiration, if there was not the vain act of entering a judicial declaration of its revocation. Things existing are often subject to revocation. A power to an agent or attorney may be revoked. But if by its own terms the power had expired—if the period appointed for its exercise had terminated, it could not be revoked or recalled. The revocation to which the statute refers is a revocation in pursuance of other statutes with which it is connected, and all of which are to be construed *in pari materia;* a revocation of letters of administration, or letters testamentary, which were of force, and which would remain of force, if not revoked. It can have no reference to letters expiring by their own terms, and by operation of law. The administration was vacant when the letters were granted to the appellees; and upon the undisputed facts of the case, their right of recovery is apparent. There was no error in the charge given by the Circuit Court, or in the refusal of the charge requested.

Affirmed.